

## Case Progress Dockets

New Search

| CASE NUMBER | FILE DATE | CASE TYPE | STATUS |
|---|---|---|---|
| 232015CA000081CAAXMX [15000081CAAXMX] 03-D | 09/11/2015 | Circuit Civil (CA) | OPEN |
| | **[PLAINTIFF**=AMERICAN STRATEGIC INSURANCE C **ATTORNEY**=MALESKI, RICHARD JOSEPH **DEFENDANT**=AMERIGAS PROPANE INC **DEFENDANT**=OMEGA FLEX INC ] **[JUDGE**=FISHEL, JOHN L II]** | | |
| | **LAST DOCKET DATE**=09/11/2015 | | |
| | [Court Events | Finance Info | Docket Info] | | |

🗎 *View Image*  🔒 *Request Image*  ⊖ *Confidential*

| ACTION DATE | TEXT | IMAGE |
|---|---|---|
| 09/11/2015 | Case 232015CA000081CAAXMX Filed with Clerk on 9/11/2015 | |
| 09/11/2015 | Judge: Assigned | |
| 09/11/2015 | Assessment 1 assessed at sum $400.00 | |
| 09/11/2015 | Assessment 1 Total Assessed $400.00 Balance Remaining $0.00 | |
| 09/11/2015 | Payment received: $400.00 Receipt Number MX 2015002893 | |
| 09/11/2015 | COVER SHEET - PRODUCTS LIABILITY - (E FILED) | 🗎 |
| 09/11/2015 | PROPOSED - TWENTY DAYS - CIVIL ACTION SUMMONS - AMERIGAS PROPANE, INC. - (E FILED) | 🗎 |
| 09/11/2015 | PROPOSED - TWENTY DAYS - CIVIL ACTION SUMMONS - OMEGA FLEX, INC. - (E FILED) | 🗎 |
| 09/11/2015 | COMPLAINT - (E FILED) | 🗎 |

# EXHIBIT A

Filing # 31957879 E-Filed 09/11/2015 01:36:30 PM

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075.

I.     **CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>FOURTEENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>GULF</u>  COUNTY, FLORIDA

Case No.: 2015-81CA
Judge: John Fishel, II

<u>American Strategic Insurance Corporation</u>
Plaintiff
          vs.
<u>Amerigas Propane Inc, Omega Flex Inc</u>
Defendant

II.     **TYPE OF CASE**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
　　☐ Business governance
　　☐ Business torts
　　☐ Environmental/Toxic tort
　　☐ Third party indemnification
　　☐ Construction defect
　　☐ Mass tort
　　☐ Negligent security
　　☐ Nursing home negligence
　　☐ Premises liability – commercial
　　☐ Premises liability – residential
☒ Products liability
☐ Real Property/Mortgage foreclosure
　　☐ Commercial foreclosure $0 - $50,000
　　☐ Commercial foreclosure $50,001 - $249,999
　　☐ Commercial foreclosure $250,000 or more
　　☐ Homestead residential foreclosure $0 – 50,000
　　☐ Homestead residential foreclosure $50,001 - $249,999
　　☐ Homestead residential foreclosure $250,000 or more
　　☐ Non-homestead residential foreclosure $0 - $50,000
　　☐ Non-homestead residential foreclosure $50,001 - $249,999
　　☐ Non-homestead residential foreclosure $250,00 or more
　　☐ Other real property actions $0 - $50,000

☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more
☐ Professional malpractice
　　☐ Malpractice – business
　　☐ Malpractice – medical
　　☐ Malpractice – other professional
☐ Other
　　☐ Antitrust/Trade Regulation
　　☐ Business Transaction
　　☐ Circuit Civil - Not Applicable
　　☐ Constitutional challenge-statute or ordinance
　　☐ Constitutional challenge-proposed amendment
　　☐ Corporate Trusts
　　☐ Discrimination-employment or other
　　☐ Insurance claims
　　☐ Intellectual property
　　☐ Libel/Slander
　　☐ Shareholder derivative action
　　☐ Securities litigation
　　☐ Trade secrets
　　☐ Trust litigation

**EXHIBIT A**

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**III.** **REMEDIES SOUGHT** (check all that apply):
- ☒ Monetary;
- ☐ Non-monetary
- ☐ Non-monetary declaratory or injunctive relief;
- ☐ Punitive

**IV.** **NUMBER OF CAUSES OF ACTION: (     )**
(Specify)

   3

**V.** **IS THIS CASE A CLASS ACTION LAWSUIT?**
- ☐ Yes
- ☒ No

**VI.** **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
- ☒ No
- ☐ Yes – If "yes" list all related cases by name, case number and court:

**VII.** **IS JURY TRIAL DEMANDED IN COMPLAINT?**
- ☒ Yes
- ☐ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature s/ Richard J. Maleski      FL Bar No.: 83841
   Attorney or party                                    (Bar number, if attorney)

   Richard J. Maleski      09/11/2015
   (Type or print name)                                 Date

IN THE CIRCUIT COURT OF THE 14TH JUDICIAL
CIRCUIT IN AND FOR GULF COUNTY, FLORIDA

| | | |
|---|---|---|
| AMERICAN STRATEGIC INSURANCE<br>CORP. a/s/o Michael & Wendy Saltzburg, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | CASE NO. |
| vs. | ) <br> ) | |
| AMERIGAS PROPANE, INC. and<br>OMEGA FLEX, INC., | ) <br> ) <br> ) | |
| Defendants. | ) <br> ) | |

## COMPLAINT

COMES NOW the Plaintiff, American Strategic Insurance Corp. a/s/o Michael & Wendy Saltzburg, by and through its undersigned counsel, and hereby files this Complaint against Defendants Amerigas Propane, Inc. and Omega Flex, Inc., and alleges the following:

## PARTIES

1.      Plaintiff, American Strategic Insurance Company a/s/o Michael & Wendy Saltzburg ("ASI"), is and has been at all material times a corporation organized and exiting under the laws of the State of Florida. At all material times, Plaintiff was authorized to do business and issue policies of insurance in the State of Florida.

2.      Plaintiff's subrogors, Michael and Wendy Saltzburg, are natural persons who at all material times owned the real property and improvements thereon at 7961 Cape San Blas Road, Cape San Blas, Florida 32456 ("the Property").

3.      At all material times, Plaintiff issued an insurance policy to Dr. and Ms. Saltzburg that provided insurance coverage for certain perils causing damages to the Property, personal property therein, and other interests.

4.     A true and correct copy of the insurance policy between Plaintiff and the Saltzburgs is attached as Exhibit "A."

5.     Defendant Amerigas Propane, Inc. ("Amerigas") is a Pennsylvania corporation having its principal place of business at 460 Gulph Road, King of Prussia, Pennsylvania 19406. Amerigas can be served with process by serving its registered agent The Prentice-Hall Corporation System, Inc. at 1201 Hays Street, Tallahassee, Florida 32301.

6.     Defendant Omega Flex, Inc. ("Omega Flex") is a Pennsylvania corporation having its principal place of business at 451 Creamery Way, Exton, Pennsylvania, 19341. Omega Flex can be served with process by serving its registered agent at the above address.

## JURISDICTION AND VENUE

7.     Jurisdiction and venue are proper in this Court because the cause of action accrued in Gulf County and the damages suffered by the Plaintiff exceed the jurisdictional limitation of this Court, exclusive of interest, costs, and attorneys' fees.

8.     This Circuit Court has subject matter jurisdiction pursuant to Florida Statute Section 26.012.

9.     This Circuit Court has personal jurisdiction over the Defendants pursuant to Florida Statute Section 48.193.

10.    Venue is proper in this jurisdiction pursuant to Florida Statute Section 47.011 and 47.051 as the cause of action accrued in Gulf County and the Property is located in Gulf County.

## COMMON FACTS

11.    At some time prior to 2009, the Saltzburgs contracted with Windolf Construction to build a home at the Property.

- 2 -

12.     In or around 2008, Windolf Construction completed the construction of the home at the Property.

13.     Upon completion, the Property contained corrugated stainless steel tubing ("CSST").

14.     The CSST at the Property was manufactured by Omega Flex and sold under the "TracPipe" brand.

15.     Amerigas was one of Windolf Construction's subcontractors.

16.     Amerigas installed the CSST at the Property.

17.     On or about June 23, 2014, a thunderstorm moved through the Property's location.

18.     During the thunderstorm, at least one lightning strike occurred near the Property.

19.     No lightning strike hit the home at the Property directly.

20.     The energy from one or more of the nearby lightning strikes, in attempting to travel to ground, migrated to the Property's CSST and caused a perforation in it.

21.     The perforation in the CSST caused a release of propane gas, which subsequently ignited and caused a fire.

22.     The resulting fire caused fire and smoke damage to the Property and its contents (the "Loss").

23.     The Saltzburgs submitted an insurance claim to Plaintiff for the damage caused by the Loss.

24.     Plaintiff paid the Saltzburgs for the damages that were caused by the Loss pursuant to Plaintiff's insurance policy with the Saltzburgs.

- 3 -

25.     Plaintiff paid and/or indemnified the Saltzburgs for damages caused by the Loss in satisfaction of their insurance claim.

26.     Plaintiff is now subrogated to the rights of the Saltzburgs under the contract of insurance and by operation of law to the extent of its payments to the Saltzburgs and is thus entitled to seek recovery from Defendants under principles of both equitable and legal subrogation.

27.     All conditions precedent to filing this civil action against Defendants have been met.

### COUNT ONE—NEGLIGENCE AGAINST AMERIGAS PROPANE, INC.

28.     Plaintiff repeats and re-alleges Paragraphs One through 27 as though such allegations have been included herein.

29.     Amerigas owed the Saltzburgs a duty to use reasonable care in the selection, installation, construction, and/or supervision of the installation of the CSST at the Property.

30.     Amerigas breached its duty to the Saltzburgs in the following ways:

a.      Failure to adequately inspect and supervise the work of its employees and/or subcontractors;

b.      Failure to properly install the CSST;

c.      Failure to ensure the CSST at the Property was grounded and/or bonded;

d.      Failure to warn the Saltzburgs about the fire risks associated with CSST and lightning strikes;

e.      Failure to select a safer alternative gas distribution system than the Omega Flex TracPipe CSST involved in the Loss;

- 4 -

f.      Failure to comply with all applicable codes, regulations, guidelines, policies, procedures, and/or industry customs or practices involved in the installation of CSST;

g.      Failure to comply with Omega Flex's installation instructions and/or procedures;

h.      Otherwise failing to use reasonable care under the circumstances as uncovered during discovery.

31.   Amerigas' breaches of its duty caused the Loss.

32.   Amerigas should have foreseen that if it breached its duty to the Saltzburgs, the CSST would pose an unreasonable risk of harm to the Property and its contents.

WHEREFORE, Plaintiff demands judgment against Amerigas for damages in excess of the jurisdictional minimum, plus interest, costs of this action as may be allowed by law, and for such other and further relief as this Court deems just and proper.

## COUNT TWO—NEGLIGENCE AGAINST OMEGA FLEX, INC.

33.   Plaintiff repeats and re-alleges Paragraphs One through 27 as though such allegations have been included herein.

34.   Omega Flex owed the Saltzburgs a duty to use reasonable care in the development, production, and marketing of its CSST product that was installed at the Property.

35.   Omega Flex breached its duty to the Saltzburgs in the following ways:

a.      Failure to adequately develop TracPipe CSST in such a way that it was strong enough to tolerate normal and expected conditions in properties where it was installed, including the Property;

- 5 -

b.     Failure to properly inspect and test the design and construction of the TracPipe CSST before distributing it to the public;

c.     Failure to take appropriate measures to ensure that the certified installers of its CSST were instructed to properly ground and/or bond the CSST and/or propane gas distribution systems;

d.     Advertised CSST as a suitable replacement for black iron pipe when it knew or should have known that its CSST could not tolerate normal and expected conditions as well as the black iron pipe it was marketed to replace;

e.     Failure to warn the Saltzburgs and installers of CSST of the substantial risk of fire associated with CSST and lightning strikes;

f.     Failure to comply with all applicable codes, regulations, guidelines, policies, procedures, and/or industry customs or practices involved in the installation of CSST;

g.     Failure to remove TracPipe CSST from the market in spite of its knowledge of TracPipe CSST's susceptibility to lightning strikes;

h.     Failure to provide any warning to consumers and/or product recall for TracPipe CSST in spite of its knowledge of TracPipe CSST's susceptibility to lightning strikes;

i.     Otherwise failing to use reasonable care under the circumstances as uncovered during discovery.

36.     Omega Flex's breaches of its duty caused the Loss.

37.     Omega Flex should have foreseen that if it breached its duty to the Saltzburgs, the CSST would pose an unreasonable risk of harm to the Property and its contents.

- 6 -

38.   If not for Omega Flex's negligence, the Loss would not have occurred.

WHEREFORE, Plaintiff demands judgment against Omega Flex for damages in excess of the jurisdictional minimum, plus interest, costs of this action as may be allowed by law, and for such other and further relief as this Court deems just and proper.

## COUNT THREE—PRODUCTS LIABILITY AGAINST OMEGA FLEX, INC.

39.   Plaintiff re-alleges Paragraphs One through 27 as though such allegations have been included herein.

40.   Omega Flex is the manufacturer and/or distributor of the CSST used at the Property.

41.   Omega Flex placed the CSST used at the Property into the stream of commerce.

42.   Omega Flex is strictly liable for any defects or unreasonably dangerous conditions that existed involving the CSST.

43.   The Saltzburgs are in the class of persons that Omega Flex should have reasonably foreseen as being subject to the harm caused by the defective condition in the CSST.

44.   The CSST reached the Property without substantial alteration to the condition it was in when it left Omega Flex's possession.

45.   The Saltzburgs only used the CSST in its intended manner and/or in a manner reasonably foreseeable to Omega Flex.

46.   The CSST installed at the Property was defective and in an unreasonably dangerous condition in that it was:

a.   Designed and/or manufactured such that it was unable to withstand damage to its integrity resulting from nearby lightning strikes;

b.   Supplied without adequate instructions for safe use;

- 7 -

c.      Supplied without adequate warnings of the CSST's potential for failure in the event of a nearby lightning strike;

d.      Supplied without adequate warnings of the latent dangerous characteristics of the CSST;

e.      Supplied without adequate warnings of the dangers inherent in the improper use or installation of the CSST;

f.      Defectively designed without safety devices that could have prevented the Loss;

g.      Lacking the safety characteristics present in the black iron pipe it replaced in residential propane distribution systems;

h.      Otherwise unreasonably dangerous and defective.

47.     The defective and unreasonably dangerous condition and subsequent malfunctioning of the CSST was the direct and proximate cause of the damages to the Property and contents therein.

WHEREFORE, Plaintiff demands judgment against Omega Flex for damages in excess of the jurisdictional minimum, plus interest, costs of this action as may be allowed by law, and for such other and further relief as this Court deems just and proper.

- 8 -

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury.

Submitted this 11th day of September, 2015.

COZEN O'CONNOR

By: _____

Richard J. Maleski
Florida Bar No. 83841
200 South Biscayne Boulevard, Suite 4410
Miami, Florida 33131
Phone: 786-871-3940
Fax: 786-220-0213
Email: rmaleski@cozen.com

LEGAL\24250717\1

- 9 -

# Exhibit A

Financial Strength Rating A.M. BEST A Excellent

ASI Assurance Corp
1 ASI Way
St. Petersburg, FL 33702
For General Inquiries: (727) 374-2502

ASI

## Dwelling Declarations Page

**Total Policy Premium:** **$2,268**
**Policy Number:** **FSA218479**

**Named Insured:**
Dr. Michael C Saltzburg AND Wendy W.
2552 BLAIRMONT TER
HOLLIDAYSBURG, PA 16648

**Agent:**
Marks Insurance Agency, Inc
PO Box 129
Apalachicola, FL 32329

**Agent Code:** 416163
For Policy Service, Call: 850-653-2161
E-Mail Address: chuck@marksinsurance.com

**Effective Date of This Transaction:** 3/11/2014

**Activity of This Transaction:** Renewal

**Residence Premises:**
7961 CAPE SAN BLAS RD
CAPE SAN BLAS, FL 32456

**Policy Period:** From: 03/11/2014 To: 03/11/2015
(At 12:01 AM Standard Time at the residence premises)

**Plan Type:** DP3

Coverage at the residence premises is provided only where a limit of liability is shown or a premium is stated.

**Coverages and Limits of Liability**

| | Limit | Premium |
|---|---|---|
| A. Dwelling Coverage | $1,069,000 | 19108.38 |
| B. Other Structures | $21,380 | Included |
| C. Contents Coverage | $175,000 | 3969.00 |
| D. Loss of Use | $106,900 | Included |
| L. Personal Liability - Each Occurrence / M. Medical Payments to Others - Each Person | $300,000/5000 | 80.00 |

OTHER COVERAGES AND ENDORSEMENTS:
(Printed on the following page)

Deductibles:

| | |
|---|---|
| **HURRICANE:** | N/A |
| ALL OTHER COVERED PERILS: | $1000 |
| SINKHOLE LOSSES: | 10% - $106,900 |

**Mortgagee:**

**1st Mortgagee:** **2nd Mortgagee:**

This is a true and certified copy of the original policy issued.

Date: 9-11-15

 Countersigned by Authorized Representative St. Petersburg, Florida Date: 01/09/2014 ASI DF 09 DEC 06 07r

| Coverages And Endorsements | Form Number | Limit | Premium |
|---|---|---|---|
| Limited Fungi, Mold, Wet or Dry Rot, or Bacteria Coverage | ASI DF 09 FCL 05 05 ✓ | | |
| Special Provisions - Florida | ASI DF 09 SP 08 12 ✓ | | |
| Special Provisions - Liability | ASI DF 09 SPL 08 12 ✓ | | |
| Premises Liability - Florida | ASI DL 09 PL 08 12 ✓ | | |
| Deductible Notification | ASI HO 09 DN 09 05 ✓ | | |
| Personal Liability | DL 24 01 07 88 ✓ | | |
| No Coverage Home Day Care | DL 24 16 07 88 ✓ | | |
| Policy Form | DP 00 03 07 88 ✓ | | |
| Premises Alarm or Fire Protection | DP 04 70 07 88 ✓ | | |
| Age of Dwelling | | | -897.07 |
| Age of Dwelling (Contents) | | | -136.66 |
| BCEG | | | -970.12 |
| BCEG (Contents) | | | -176.05 |
| Months Owner Occupied | | | -429.32 |
| NHR Deductible | | 1000 | -90.73 |
| Personal Prop Replacement Cost | HO 23 86 01 06 ✓ | | 309.95 |
| Months Owner Occupied (Contents) | | | -51.18 |
| Windstorm Loss Reduction | | | -11702.85 |
| Windstorm Loss Reduction (Contents) | | | -2575.61 |
| Covered Porch | | | 104.87 |
| Covered Porch (Contents) | | | 23.08 |
| Theft Coverage | DP 04 73 07 88 ✓ | | 434.11 |
| Hardiplank Siding | | | -112.20 |
| Hardiplank Siding (Contents) | | | -17.85 |
| Exclude Wind | ASI DF 09 WHE 01 07 ✓ | | -3636.57 |
| Exclude Wind (Contents) | | | -1062.03 |
| NHR Deductible (Contents) | | | -14.40 |
| Sinkhole Coverage | ASI DF 09 SH 08 12 ✓ | | 15.50 |
| Sinkhole Coverage (Contents) | ASI DF 09 SH 08 12 ✓ | | 2.38 |
| Sinkhole Coverage Deductible | | 106900 | -1.55 |
| Sinkhole Coverage Deductible (Contents) | | 106900 | -0.24 |

| Fees and Assessments: | | | |
|---|---|---|---|
| Emergency Management Preparedness Assistance Fee | | | 2.00 |
| Managing General Agent Fee | | | 25.00 |
| Citizens Property Insurance Corporation Emergency Assessment | | | 21.98 |
| Florida Hurricane Catastrophe Fund Fee | | | 28.57 |
| Florida Insurance Guaranty Association Fee | | | 17.40 |

**The Hurricane Coverage portion of your Total Premium is:** $0
**The Non-Hurricane Coverage portion of your Total Premium is:** $2,268

Additional Insured:  Additional Interest:

Interest:

**Rating Information:**
Construction Type:   Frame
Type of Residence:   Single Family
Year Built:   2008
Total Square Feet:   5,355
ASI Territory:   125
**Notes:**

# Checklist of Coverage

## Policy Type: DP3

### Dwelling

**The following checklist is for informational purposes only. Florida law prohibits this checklist from changing any of the provisions of the insurance contract which is the subject of this checklist. Any endorsement regarding changes in types of coverage, exclusions, limitations, reductions, deductibles, coinsurance, renewal provisions, cancellation provisions, surcharges, or credits will be sent separately.**

Reviewing this checklist together with your policy can help you gain a better understanding of your policy's actual coverages and limitations, and may even generate questions. By addressing any questions now, you will be more prepared later in the event of a claim. Experience has shown that many questions tend to arise regarding the coverage of attached or detached screened pool enclosures, screened porches, and other types of enclosures. Likewise, if your policy insures a condominium unit, questions may arise regarding the coverage of certain items, such as individual heating and air conditioning units; individual water heaters; floor, wall, and ceiling coverings; built-in cabinets and counter tops; appliances; window treatments and hardware; and electrical fixtures.

A clear understanding of your policy's coverages and limitations will reduce confusion that may arise during claims settlement. Please refer to the policy for details and any exceptions to the coverages listed in this checklist. All coverages are subject to the provisions and conditions of the policy and any endorsements. If you have questions regarding your policy, please contact your agent or company. Consumer assistance is available from the Department of Financial Services, Division of Consumer Services' Helpline at (800) 342-2762 or www.fldfs.com.

This form was adopted by the Florida Financial Services Commission.

| Dwelling Structure Coverage (Place of Residence) | | | |
|---|---|---|---|
| Limit of Insurance: | $1,069,000 | Loss Settlement Basis: | Replacement Cost |

| Other Structures Coverage (Detached from Dwelling) | | | |
|---|---|---|---|
| Limit of Insurance: | $21,380 | Loss Settlement Basis: | Replacement Cost |

| Personal Property Coverage | | | |
|---|---|---|---|
| Limit of Insurance: | $175,000 | Loss Settlement Basis: | Replacement Cost |

| Deductibles | | | |
|---|---|---|---|
| Annual Hurricane: | N/A | All Perils (Other Than Hurricane): | $1,000 |

**Checklist of Coverage (continued)**

|   | The above Limit of Insurance, Deductibles, and Loss Settlement Basis apply to the following Perils Insured Against:<br>(Items below marked **Y (Yes)** indicate coverage IS included, those marked **N (No)** indicate coverage is NOT included) |
|---|---|
| Y | Fire or Lightning |
| N | Hurricane (Coverage Excluded for Screened Enclosures and Carports - Read Your Policy for Additional Exclusions) |
| N | Flood (Including storm surge) |
| N | Windstorm or Hail (other than hurricane) |
| Y | Explosion |
| Y | Riot or Civil Commotion |
| Y | Aircraft |
| Y | Vehicles |
| Y | Smoke |
| Y | Vandalism or Malicious Mischief |
| Y | Theft (Dwelling and Other Structures) |
| Y | Falling Objects |
| Y | Weight of Ice, Snow or Sleet |
| Y | Accidental Discharge or Overflow of Water or Steam |
| Y | Sudden and Accidental Tearing Apart, Cracking , Burning or Bulging |
| Y | Freezing |
| Y | Sudden and Accidental Damage from Artificially Generated Electrical Current |
| Y | Volcanic Eruption |
| Y | Catastrophic Ground Cover Collapse |
| Y | Sinkhole |

**Special limits and loss settlement exceptions may apply to certain items. Refer to your policy for details.**

| Loss of Use Coverage | | | |
|---|---|---|---|
| Coverage | | Limit of Insurance | Time Limit |
| (Items below marked Y (Yes) indicate coverage IS included, those marked N (No) indicate coverage is NOT included) | | | |
| Y | Additional Living Expense | $106,900 | Shortest time to repair or replace the damages up to 12 months. |
| Y | Fair Rental Value | $106,900 | Shortest time to repair or replace the damages up to 12 months. |
| Y | Civil Authority Prohibits Use | $106,900 | No more than 2 weeks |

**Checklist of Coverage (continued)**

| | **Property - Additional/Other Coverages** | | | |
|---|---|---|---|---|
| | (Items below marked Y (Yes) indicate coverage IS included, those marked N (No) indicate coverage is NOT included) | Limit of Insurance | Amount of insurance is an additional amount of coverage or is included within the policy limit. | |
| | | | Included | Additional |
| Y | Debris Removal | $1,069,000 | Y | N |
| N | Debris Removal - Trees | | | |
| Y | Reasonable Repairs | $1,069,000 | Y | N |
| Y | Property Removed | $175,000 up to 30 Days | Y | N |
| N | Credit Card, Electronic Fund Transfer Card, or Access Device, Forgery and Counterfeit Money | | | |
| N | Loss Assessment | N/A | N | N |
| Y | Collapse | $1,069,000 | Y | N |
| Y | Glass or Safety Glazing Material | $1,069,000 | Y | N |
| N | Landlord's Furnishings | | | |
| N | Law and Ordinance | N/A | N | N |
| N | Grave Markers | | | |
| Y | Mold / Fungi | $10,000 | Y | N |

**Checklist of Coverage (continued)**

| | Discounts | |
|---|---|---|
| | (Items below marked Y (Yes) indicate discount IS applied, those marked N (No) indicate discount is NOT applied) | Dollar ($) Amount of Discount |
| N | Multiple Policy (Companion Policy) | N/A |
| N | Fire Alarm / Smoke Alarm / Burglar Alarm/ Sprinker (Protective Devices) | $0 |
| Y | Windstorm Loss Reduction (WLR) Credits | $(14,278) |
| Y | Building Code Effectiveness Grading Schedule | $(1,146) |
| N | Secured Community/Building Credit | N/A |
| N | Financial Responsibility Credit | $0 |
| N | Senior/Retiree Discount | N/A |
| N | Electronic Policy Distribution Discount | N/A |
| Y | Hardiplank Siding Discount | $(130) |

| | Insurer May Insert Any Other Property Coverage Below | | |
|---|---|---|---|
| | (Items below marked Y (Yes) indicate coverage IS included, those marked N (No) indicate coverage is NOT included) | Limit of Insurance | Loss Settlement Basis: (i.e.: Replacement Cost, Actual Cash Value, Stated Value, etc.) |
| Y | Personal Property Replacement Cost Coverage | $175,000 | Replacement Cost |
| Y | Limited Theft Coverage for Personal Property | $175,000 | Replacement Cost |

**Checklist of Coverage (continued)**

| Personal Liability Coverage | | |
|---|---|---|
| Y | Limit of Insurance: | $300,000 |

| Medical Payments to Others Coverage | | |
|---|---|---|
| Y | Limit of Insurance: | $ 5,000 |

| Liability - Additional/Other Coverages | | | | |
|---|---|---|---|---|
| | (Items below marked Y (Yes) indicate coverage IS included, those marked N (No) indicate coverage is NOT included) | Limit of Insurance | Amount of insurance is an additional amount of coverage or is included within the policy limit. | |
| | | | Included | Additional |
| Y | Claim Expenses | | N | Y |
| Y | First Aid Expenses | | N | Y |
| Y | Damage to Property of Others | $500 | N | Y |
| N | Loss Assessment | N/A | N/A | N/A |

| Insurer May Insert Any Other Liability Coverage Below | |
|---|---|
| (Items below marked Y (Yes) indicate coverage IS included, those marked N (No) indicate coverage is NOT included) | Limit of Insurance |

**ASI ASSURANCE CORP**
*P.O. Box 33018*
Saint Petersburg, FL 33733-8018



# Renewal Premium Notice

Dr. Michael C Saltzburg AND Wendy  W.
2552 BLAIRMONT TER
HOLLIDAYSBURG, PA 16648

AgentID: 416163
Marks Insurance Agency, Inc
PO Box 129
Apalachicola, FL 32329
850-653-2161

| | | | |
|---|---|---|---|
| **POLICY NUMBER:** | FSA218479 | **POLICY TYPE:** | Dwelling |
| **POLICY HOLDER:** | Dr. Michael C Saltzburg AND Wendy  W. | **POLICY INCEPTION DATE:** | 03/11/2014 |
| **PROPERTY LOCATION:** | | **NOTICE DATE:** | 1/9/2014 |

7961 CAPE SAN BLAS RD CAPE SAN BLAS, FL 32456

Dear PolicyHolder:
We are pleased to enclose a renewal offer for your policy.  Please pay the amount shown below in order to continue
coverage.  Since a service fee is added for each installment, you can save money by paying the total amount due.
Thank you for allowing ASI to serve your insurance needs.  We appreciate your business.

Florida Statute 627.4133(7)(a)1 requires insurers to provide the dollar amount of premium charged for assessments.
The renewal premium shown below includes the following:

| | | | |
|---|---|---|---|
| Florida Hurricane Catastrophe Fund | $28.57 | Citizens Property Insurance Corporation | $0.00 |
| Florida Insurance Guaranty Association | $17.40 | Citizens Property Insurance Corporation Emergency | $21.98 |

Florida Statute 627.4133(7)(a)2 requires insurers to provide the dollar amount of premium increase due to an
approved rate increase and the dollar amount of premium increase due to coverage changes.  The renewal premium
shown below includes the following:

   $-516.54  Decrease  due to a rate revision approved by the Florida Office of Insurance Regulation

    $75.54  Increase due to a change in coverage

Your policy consists of a Hurricane and Non-hurricane premium.  The renewal premium shown below includes
the following:

| | |
|---|---|
| Hurricane Premium | $0.00 |
| Non-hurricane Premium | $2,268.00 |

**Payor:**

**Dr. Michael C Saltzburg AND Wendy  W.**
**2552 BLAIRMONT TER**
**HOLLIDAYSBURG, PA 16648**
**Loan #:**

**Make Checks Payable and Mail To:**

ASI Underwriters
P.O. Box 33018
St. Petersburg, FL 33733-8018

---

*DETACH HERE AND RETURN BOTTOM PORTION WITH YOUR PAYMENT TO ASI*

**1 Pay Amount:**      **$2268.00**

**2 Pay, Down Payment:**      **$1,259.55**
   Pay Plan Fee of  $31.00  is added to each addtl payment

**4 Pay, Down Payment:**      **$721.71**
   Pay Plan Fee of  $17.00  is added to each addtl payment

**Policy Number**
FSA218479

**Insured**
Dr. Michael C Saltzburg AND Wendy  W.

**Agent**
Marks Insurance Agency, Inc

| | |
|---|---|
| **Minimum Amount Due:** | $721.71 |
| **Total Amount Due:** | $2268.00 |

**Due Date:**    03/11/2014

Dear Policyholder:

Currently, you do not have Ordinance or Law Coverage on your policy.

Florida Statute 627.7011 requires insurers to provide Ordinance or Law coverage on all Homeowners policies unless the insured rejects this coverage.  Once a policy is in force, policyholders are required to sign a rejection once every three years.  Ordinance or Law coverage extends coverage to increases in the cost of construction, repair, or demolition of your dwelling or other structures on your premises that result from ordinances, laws or building codes.  The additional coverage provided by this is limited to 25% of Coverage A and applies only when a loss is caused by a peril covered under your policy.   By signing below, you will reject Ordinance or Law Coverage now and on subsequent renewals under this policy.

If you decide to purchase this coverage, please notify your agent at the phone number listed.

**Ordinance or Law Rejection:**
Florida Statute 627.7011 requires insurers to provide Ordinance or Law coverage on all Homeowners policies unless the insured rejects this coverage.  Ordinance or Law coverage extends coverage to increases in the cost of construction, repair, or demolition of your dwelling or other structures on your premises that result from ordinances, laws or building codes.  The additional coverage provided by this is limited to 25% of Coverage A and applies only when a loss is caused by a peril covered under your policy.

I hereby reject Ordinance or Law Coverage now and on subsequent renewals under this policy.  I understand that I must notify my agent if I decide to purchase this coverage in the future.

_____   _____
Insured Signature                                Date



**Name Insured(s):**      Dr. Michael C Saltzburg AND Wendy  W.                    **Policy Number:**      **FSA218479**

# IMPORTANT NOTICE

**LAW AND ORDINANCE COVERAGE IS AN IMPORTANT
COVERAGE THAT YOU MAY WISH TO PURCHASE.  YOU
MAY ALSO NEED TO CONSIDER THE PURCHASE OF
FLOOD INSURANCE FROM THE NATIONAL FLOOD
INSURANCE PROGRAM.  WITHOUT THIS COVERAGE, YOU
MAY HAVE UNCOVERED LOSSES.  PLEASE DISCUSS THESE
COVERAGES WITH YOUR INSURANCE AGENT.**

ASI DF 09 DEC 06 07r

---

## AGREEMENT

---

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

---

## DEFINITIONS

---

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance.

---

## COVERAGES

---

This insurance applies to the Described Location, Coverages for which a Limit of Liability is shown and Perils Insured Against for which a Premium is stated.

### COVERAGE A – Dwelling

We cover:

1. the dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes, including structures attached to the dwelling;

2. materials and supplies located on or next to the Described Location used to construct, alter or repair the dwelling or other structures on the Described Location; and

3. if not otherwise covered in this policy, building equipment and outdoor equipment used for the service of and located on the Described Location.

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B – Other Structures

We cover other structures on the Described Location, set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. used in whole or in part for commercial, manufacturing or farming purposes; or

2. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

### COVERAGE C – Personal Property

We cover personal property, usual to the occupancy as a dwelling and owned or used by you or members of your family residing with you while it is on the Described Location. At your request, we will cover personal property owned by a guest or servant while the property is on the Described Location.

**Property Not Covered.** We do not cover:

1. accounts, bank notes, bills, bullion, coins, currency, deeds, evidences of debt, gold other than goldware, letters of credit, manuscripts, medals, money, notes other than bank notes, passports, personal records, platinum, securities, silver other than silverware, tickets and stamps;

2. animals, birds or fish;

3. aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

4. motor vehicles or all other motorized land conveyances. This includes:

   a. their equipment and accessories; or

   b. any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or all other motorized land conveyances, including:

      (1) accessories or antennas; or

      (2) tapes, wires, records, discs or other media for use with any such device or instrument;

   while in or upon the vehicle or conveyance.

---

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

  **a.** used to service the Described Location; or

  **b.** designed for assisting the handicapped;

**5.** watercraft, other than rowboats and canoes;

**6.** data, including data stored in:

  **a.** books of account, drawings or other paper records; or

  **b.** electronic data processing tapes, wires, records, discs or other software media.

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market;

**7.** credit cards or fund transfer cards.

If you remove personal property from the Described Location to a newly acquired principal residence, the Coverage C limit of liability will apply at each residence for the 30 days immediately after you begin to move the property there. This time period will not extend beyond the termination of this policy. Our liability is limited to the proportion of the limit of liability that the value at each residence bears to the total value of all personal property covered by this policy.

**COVERAGE D – Fair Rental Value**

If a loss to property described in Coverage A, B or C by a Peril Insured Against under this policy makes that part of the Described Location rented to others or held for rental by you unfit for its normal use, we cover its:

  **Fair Rental Value,** meaning the fair rental value of that part of the Described Location rented to others or held for rental by you less any expenses that do not continue while that part of the Described Location rented or held for rental is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the Described Location rented or held for rental.

If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a Peril Insured Against in this policy, we cover the Fair Rental Value loss for no more than two weeks.

The periods of time referenced above are not limited by the expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**COVERAGE E – Additional Living Expense**

If a loss to property described in Coverage A, B or C by a Peril Insured Against under this policy makes the Described Location unfit for its normal use, we cover your:

  **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the Described Location or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a Peril Insured Against in this policy, we cover the Additional Living Expense loss for no more than two weeks.

The periods of time referenced above are not limited by the expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**OTHER COVERAGES**

**1. Other Structures.** You may use up to 10% of the Coverage A limit of liability for loss by a Peril Insured Against to other structures described in Coverage B.

Use of this coverage does not reduce the Coverage A limit of liability for the same loss.

**2. Debris Removal.** We will pay your reasonable expense for the removal of:

  **a.** debris of covered property if a Peril Insured Against causes the loss; or

  **b.** ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

Debris removal expense is included in the limit of liability applying to the damaged property.

**3. Improvements, Alterations and Additions.** If you are a tenant of the Described Location, you may use up to 10% of the Coverage C limit of liability for loss by a Peril Insured Against to improvements, alterations and additions, made or acquired at your expense, to that part of the Described Location used only by you.

Use of this coverage does not reduce the Coverage C limit of liability for the same loss.

**4. World-Wide Coverage.** You may use up to 10% of the Coverage C limit of liability for loss by a Peril Insured Against to property covered under Coverage C except rowboats and canoes, while anywhere in the world.

Use of this coverage reduces the Coverage C limit of liability for the same loss.

5. **Rental Value and Additional Living Expense.** You may use up to 10% of the Coverage A limit of liability for loss of both fair rental value as described in Coverage D and additional living expense as described in Coverage E.

Use of this coverage does not reduce the Coverage A limit of liability for the same loss.

6. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

a. does not increase the limit of liability that applies to the covered property;

b. does not relieve you of your duties, in case of a loss to covered property, as set forth in Condition 4.b.

7. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

8. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the Described Location for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by you or a resident of the Described Location or Vandalism or malicious mischief, including damage during a burglary or attempted burglary, but not theft of property.

The limit of liability for this coverage will not be more than 5% of the Coverage A limit of liability, or more than $500 for any one tree, shrub or plant. We do not cover property grown for commercial purposes.

This coverage is additional insurance.

9. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

10. **Collapse.** We insure for risk of direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. Perils Insured Against in Coverage C – Personal Property. These perils apply to covered building and personal property for loss insured by this Other Coverage;

b. hidden decay;

c. hidden insect or vermin damage;

d. weight of contents, equipment, animals or people;

e. weight of rain which collects on a roof;

f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b, c, d, e and f unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

11. **Glass or Safety Glazing Material.** We cover:

a. the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

b. damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the Described Location if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

## PERILS INSURED AGAINST

**COVERAGE A – DWELLING and
COVERAGE B – OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, we do not insure loss:

**1.** involving collapse, other than as provided in Other Coverages 10;

**2.** caused by:

**a.** freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

**(1)** maintain heat in the building; or

**(2)** shut off the water supply and drain the system and appliances of water;

**b.** freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(1)** fence, pavement, patio or swimming pool;

**(2)** foundation, retaining wall or bulkhead; or

**(3)** pier, wharf or dock;

**c.** theft of property not part of a covered building or structure;

**d.** theft in or to a dwelling or structure under construction;

**e.** wind, hail, ice, snow or sleet to:

**(1)** outdoor radio and television antennas and aerials including their lead-in wiring, masts or towers; or

**(2)** trees, shrubs, plants or lawns;

**f.** vandalism and malicious mischief, theft or attempted theft if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**g.** constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

**h. (1)** wear and tear, marring, deterioration;

**(2)** inherent vice, latent defect, mechanical breakdown;

**(3)** smog, rust or other corrosion, mold, wet or dry rot;

**(4)** smoke from agricultural smudging or industrial operations;

**(5)** discharge, dispersal, seepage, migration release or escape of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(6)** settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings; or

**(7)** birds, vermin, rodents, insects or domestic animals.

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

**3.** excluded under General Exclusions.

Under items 1 and 2, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

**COVERAGE C – PERSONAL PROPERTY**

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in the General Exclusions.

**1. Fire or lightning.**

**2. Windstorm or hail.**

This peril does not include loss to:

**a.** property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening;

**b.** canoes and rowboats; or

**c.** trees, shrubs or plants.

**3. Explosion.**

**4. Riot or civil commotion.**

**5. Aircraft,** including self-propelled missiles and spacecraft.

**6. Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

This peril does not include loss by pilferage, theft, burglary or larceny.

9. **Damage by Burglars,** meaning damage to covered property caused by Burglars.

This peril does not include:

**a.** theft of property; or

**b.** damage caused by burglars to property on the Described Location if the dwelling has been vacant for more than 30 consecutive days immediately before the damage occurs. A dwelling being constructed is not considered vacant.

10. **Falling Objects.**

This peril does not include loss to property contained in the building unless the roof or an outside wall of the building is first damaged by a falling object.

Damage to the falling object itself is not covered.

11. **Weight of ice, snow or sleet** which causes damage to property contained in the building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

**a.** to the system or appliance from which the water or steam escaped;

**b.** caused by or resulting from freezing except as provided in the peril of freezing below; or

**c.** on the Described Location caused by accidental discharge or overflow which occurs off the Described Location.

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss caused by or resulting from freezing except as provided in the peril of freezing below.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the Described Location while the dwelling is unoccupied or being constructed, unless you have used reasonable care to:

**a.** maintain heat in the building; or

**b.** shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic Eruption** other than loss caused by earthquake, land shock waves or tremors.

---

## GENERAL EXCLUSIONS

---

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

**a. Ordinance or Law,** meaning enforcement of any ordinance or law regulating the use, construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

**b. Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

**(1)** fire;

**(2)** explosion; or

**(3)** breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

**c. Water Damage,** meaning:

**(1)** flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**(2)** water which backs up through sewers or drains or which overflows from a sump; or

**(3)** water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire or explosion resulting from water damage is covered.

**d. Power Failure,** meaning the failure of power or other utility service if the failure takes place off the Described Location. But, if a Peril Insured Against ensues on the Described Location, we will pay only for that ensuing loss.

**e. Neglect,** meaning your neglect to use all reasonable means to save and preserve property at and after the time of a loss.

 **f. War,** including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**g. Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of the Conditions.

**h. Intentional Loss,** meaning any loss arising out of any act committed:

 **(1)** by or at the direction of you or any person or organization named as an additional insured; and

 **(2)** with the intent to cause a loss.

2. We do not insure for loss to property de-scribed in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

**a. Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

**b.Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

**c.Faulty, inadequate or defective:**

 **(1)** planning, zoning, development, surveying, siting;

 **(2)** design, specifications, workmanship, repair, construction, renovations, remodeling, grading, compaction;

 **(3)** materials used in repair, construction, renovation or remodeling; or

 **(4)** maintenance;

 of part or all of any property whether on or off the Described Location.

---

## CONDITIONS

---

**1. Policy Period.** This policy applies only to loss which occurs during the policy period.

**2. Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**a.** for an amount greater than the interest of a person insured under this policy; or

**b.** for more than the applicable limit of liability.

**3. Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, you have:

**a.** intentionally concealed or misrepresented any material fact or circumstance;

**b.** engaged in fraudulent conduct; or

**c.** made false statements;

relating to this insurance.

**4. Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

**a.** give prompt notice to us or our agent;

**b. (1)** protect the property from further damage;

 **(2)** make reasonable and necessary repairs to protect the property; and

 **(3)** keep an accurate record of repair expenses;

**c.** prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**d.** as often as we reasonably require:

 **(1)** show the damaged property;

 **(2)** provide us with records and documents we request and permit us to make copies; and

 **(3)** submit to examination under oath, while not in the presence of any other named insured, and sign the same;

**e.** send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

 **(1)** the time and cause of loss;

 **(2)** your interest and that of all others in the property involved and all liens on the property;

 **(3)** other insurance which may cover the loss;

 **(4)** changes in title or occupancy of the property during the term of the policy;

---

Copyright, Insurance Services Office, Inc.,  1988, 1992   **DP 00 03 07 88**

**(5)** specifications of damaged buildings and detailed repair estimates;

**(6)** the inventory of damaged personal property described in 4c;

**(7)** receipts for additional living expenses incurred and records that support the fair rental value loss.

**5. Loss Settlement.** Covered property losses are settled as follows:

**a. (1)** Personal property;

**(2)** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

**(3)** Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**b.** Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

**(1)** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(a)** the limit of liability under this policy that applies to the building;

**(b)** the replacement cost of that part of the building damaged for like construction and use on the same premises; or

**(c)** the necessary amount actually spent to repair or replace the damaged building.

**(2)** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(a)** the actual cash value of that part of the building damaged; or

**(b)** that proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**(3)** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(a)** excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

**(b)** those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(c)** underground flues, pipes, wiring and drains.

**(4)** We will pay no more than the actual cash value of the damage unless:

**(a)** actual repair or replacement is complete; or

**(b)** the cost to repair or replace the damage is both:

**(i)** less than 5% of the amount of insurance in this policy on the building; and

**(ii)** less than $2500.

**(5)** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

**6. Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

**a.** repair or replace any part to restore the pair or set to its value before the loss; or

**b.** pay the difference between actual cash value of the property before and after the loss.

**7. Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

**8. Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**a.** pay its own appraiser; and

**b.** bear the other expenses of the appraisal and umpire equally.

**9. Other Insurance.** If property covered by this policy is also covered by other fire insurance, we will pay only the proportion of a loss caused by any peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of fire insurance covering the property.

**10. Subrogation.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, the person insured must sign and deliver all related papers and cooperate with us.

**11. Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

**12. Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

**13. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**a.** reach an agreement with you;

**b.** there is an entry of a final judgment; or

**c.** there is a filing of an appraisal award with us.

**14. Abandonment of Property.** We need not accept any property abandoned by you.

**15. Mortgage Clause.**

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

**a.** notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**b.** pays any premium due under this policy on demand if you have neglected to pay the premium; and

**c.** submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

**a.** we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

**b.** at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**16. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**17. Cancellation.**

**a.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**b.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

**(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

    (a) if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

    (b) if the risk has changed substantially since the policy was issued.

    This can be done by letting you know at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**c.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**d.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**18. Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**19. Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

**20. Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**21. Assignment.** Assignment of this policy will not be valid unless we give our written consent.

**22. Death.** If you die, we insure:

    **a.** your legal representatives but only with respect to the property of the deceased covered under the policy at the time of death;

    **b.** with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**23. Nuclear Hazard Clause.**

    **a.** "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

    **b.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

    **c.** This policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**24. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**25. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

# SPECIAL PROVISIONS FOR FLORIDA
ASI DF 09 SP

**AGREEMENT** is replaced by the following:

In reliance on the information you have given us, we agree to provide the insurance coverages indicated on the Policy Declarations. In return, you must pay the premium when due and comply with the policy terms and conditions and immediately inform us of any change of title, use or occupancy of the "residence premises".

## DEFINITIONS

The following **Definitions** are added:

**"Hurricane loss"** means any loss resulting from the peril of Windstorm caused by a hurricane during any period:

- beginning when a hurricane watch or hurricane warning is issued for any portion of Florida by the National Hurricane Center of the National Weather Service;
- remaining in effect for as long as hurricane conditions exist anywhere in the state of Florida; and
- ending 72 hours after any hurricane watch or hurricane warning has been discontinued for all counties of the state of Florida by the National Hurricane Center of the National Weather Service.

**"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or by-products produced or released by fungi.

**"Vacant"** means the dwelling lacks the necessary amenities, adequate furnishings, or utilities and services to permit occupancy of the dwelling as a residence.

**"Unoccupied"** means the dwelling is not being inhabited as a residence.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

## COVERAGE A – Dwelling

Under, We cover:

**1.** is replaced by the following:

1. The dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes, including attached structures and attached wall-to-wall carpeting if damage to the dwelling is caused by a covered loss.

The following is added:

**4.** In-ground swimming pools including related permanently installed equipment such as pumps and filters.

## COVERAGE B – Other Structures

**Coverage B - Other Structures** is replaced by the following:

### COVERAGE B - Other Structures

We cover:

1. Other structures on the "residence premises" set apart from the dwelling by a clear space.
2. Other structures connected to the dwelling by only a fence, utility line, or similar connection.
3. Fences whether attached or not attached to the dwelling.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover:

1. Other structures used in whole or in part for "business"; or
2. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

## COVERAGE A – Dwelling and COVERAGE B – Other Structures

The following is added:

**Special Limits of Liability**

**Cosmetic and Aesthetic Damage to Floors.** The total limit of liability for Coverages **A** and **B** combined is $10,000 per policy term for cosmetic and aesthetic damages to floors.

1. Cosmetic or aesthetic damage includes, but is not limited to, chips, scratches, dents or any other damage to less than 5% of the total floor surface area and does not prevent typical use of the floor.
2. This limit includes the cost of tearing out and replacing any part of the building necessary to repair the damaged flooring.
3. This limit does not increase the Coverage **A** or Coverage **B** limits of liability shown on the declaration page.
4. This limit does not apply to cosmetic or aesthetic damage to floors caused by a Peril Insured Against as named and described under **Coverage C – Personal Property**.

**COVERAGE C – Personal Property**
The following is added to **Property Not Covered:**
8. Your satellite dish, satellite antenna or radio towers and their antenna. This exclusion also applies to all related receiving equipment including receiver mounts, transducers or other receiver parts or installation parts. Television sets are not an excluded item under this exclusion.

**COVERAGE D – Fair Rental Value** is replaced by the following:
**COVERAGE D – Fair Rental Value**

If a loss to property described in Coverage **A**, **B** or **C** by a Peril Insured Against under this policy makes that part of the Described Location rented to others or held for rental by you unfit for its normal use, we cover 80% of its:

**Fair Rental Value,** meaning the fair rental value of that part of the Described Location rented to others or held for rental by you less any expenses that do not continue while that part of the Described Location rented or held for rental is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the Described Location rented or held for rental subject to a maximum time limit of 12 months.

If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a Peril Insured Against in this policy, we cover the

Fair Rental Value loss for no more than two weeks.

The periods of time referenced above are not limited by the expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**COVERAGE E – Additional Living Expense** is replaced with the following:

**COVERAGE E – Additional Living Expense**

If a loss to property described in coverage **A**, **B** or **C** by a Peril Insured Against under this policy makes the Described Location unfit for its normal use, we cover 80% of your:

**Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the Described Location or, if you permanently relocate, the shortest time required for your household to settle elsewhere. In either case, the time period for this coverage is limited to a maximum of 12 months.

If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a Peril Insured Against in this policy, we cover the Additional Living Expense loss for no more than two weeks.

The periods of time referenced above are not limited by the expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**OTHER COVERAGES**

1. **Other Structures** is replaced by the following:
1. **Other Structures**
   In order for Other Structures to be covered, a limit must be indicated for Coverage B – Other Structures and a premium paid.

6. **Reasonable Repairs** is replaced by the following:
6. **Reasonable Repairs.** We will pay the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, if the peril causing the loss and related damages are covered.

This does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I – CONDITION **4.b.** This coverage does not increase the limit of liability applying to the damaged covered property.

**10. Collapse** is replaced by the following:
**10. Collapse.**
- **a.** The coverage provided under this Other Coverage - Collapse applies only to an abrupt collapse.
- **b.** For the purpose of this Other Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.
- **c.** This Other Coverage – Collapse does not apply to:
    - **(1)** A building or any part of a building that is in danger of falling down or caving in;
    - **(2)** A part of a building that is standing, even if it has separated from another part of the building; or
    - **(3)** A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.
- **d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:
    - **(1)** The Perils Insured Against named under Coverage **C;**
    - **(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;
    - **(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;
    - **(4)** Weight of contents, equipment, animals or people;
    - **(5)** Weight of rain which collects on a roof; or

- **(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.
- **e.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.
- **f.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**11. Glass or Safety Glazing Material** is replaced by the following:
**11. Glass or Safety Glazing Material.**
- **a.** We cover:
    - **(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;
    - **(2)** The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window; and
    - **(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.
- **b.** This coverage does not include loss:
    - **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in a. **(3)** above; or
    - **(2)** On the Described Location if the dwelling has been "vacant" or "unoccupied" for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in **a. (2)** above. A dwelling being constructed is not considered "vacant" or "unoccupied".

Loss to glass covered under this OTHER COVERAGE **11.,** will be settled on the basis of replacement with safety glazing

materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

The following **Other Coverage** is added:

**12. "Fungi", Mold, Wet Or Dry Rot, Or Bacteria**

    **a.** We will pay up to $10,000 for:

        **(1)** The total of all loss payable under Coverages caused by or resulting directly or indirectly from "fungi", mold, wet or dry rot, or bacteria;

        **(2)** The cost to remove "fungi", mold, wet or dry rot, or bacteria from property covered under Coverages.

        **(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", mold, wet or dry rot, or bacteria; and

        **(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", mold, wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", mold, wet or dry rot, or bacteria.

    **b.** The coverage described in **a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

    **c.** $10,000 is the most we will pay for the total of all loss or costs payable under this Other Coverage regardless of the:

        **(1)** Number of locations insured; or

        **(2)** Number of claims made.

    **d.** If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", mold, wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Other Coverage, except to the extent that "fungi", mold, wet or dry rot, or bacteria causes an increase in the loss. Any

such increase in the loss will be subject to the terms of this Other Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

**PERILS INSURED AGAINST**

The introductory paragraphs are replaced by:

    **Coverage A – Dwelling and Coverage B – Other Structures**: We insure against risk of sudden and accidental direct physical loss to property described in Coverages **A** and **B** only if that loss is a physical loss to property; however, we do not insure for loss:

    **Coverage C – Personal Property**: We insure for sudden and accidental direct physical loss to the property described in Coverage **C** caused by a peril listed below unless the loss is excluded in the General Exclusions.

Under **Coverage A - Dwelling and Coverage B - Other Structures**

Item **2.f.** is replaced by the following:

    **f.** Vandalism and malicious mischief, theft or attempted theft if the dwelling has been "vacant" or "unoccupied" for more than 30 days immediately before the loss. A dwelling being constructed is not considered "vacant" or "unoccupied".

Item **2.g.** is replaced by the following:

    **g.** constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, if any of these occurs over a period of 14 or more  days, whether hidden or not.

Item **2.h.(3)** is replaced by the following:

    **h.(3)** smog, rust or other corrosion, mold, "fungi", wet or dry rot;

Item **2.h.(5)** is replaced by the following:

    **h.(5)** Discharge, dispersal, seepage, migration, release or escape of pollutants.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed.

**Coverage C - Personal Property**

The following is added to item **12.**:

 **d.** Caused by or resulting from constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, if any of these occurs over a period of 14 or more days, whether hidden or not.

## GENERAL EXCLUSIONS

Under Paragraph **1.**, item **b. Earth Movement** is replaced by the following:

**b.** **Earth Movement and Settlement**, meaning:

 **(1)** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

 **(2)** Landslide;

 **(3)** Mine subsidence;

 **(4)** Mudflow;

 **(5)** Earth sinking, rising or shifting;

 **(6)** Clay shrinkage or other expansion or contraction of soils or organic materials;

 **(7)** Decay of buried or organic materials, construction debris, or fill;

 **(8)** Settling, cracking or expansion of foundation; or

 **(9)** Soil movement resulting from blasting.

whether caused by natural or man made activities; unless direct loss by:

  **(i)** Fire; or
  **(ii)** Explosion;

ensues and then we will pay only for the ensuing loss.

Under Paragraph **1.**, item **c. Water Damage** is replaced by the following:

**c.** **Water Damage**, meaning:

 **(1)** Flood, surface water, waves, tidal waves, tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, whether or not driven by wind, including storm surge;

 **(2)** Water, water-borne material, sewage or any other substance which backs up through sewers or drains;

 **(3)** Water, water-borne material, sewage or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is

drained from a foundation area of a structure; or

 **(4)** Water, water-borne material, ~~or~~ sewage or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on or flows, seeps or leaks through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure.

 **(5)** Escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

Under Paragraph **1.**, the following **Exclusions** are added:

**i.** **Wind or Hail** to:

 **(1)** outdoor radio and television antennas or satellite dishes and aerials including their lead in wiring, masts or towers; or

 **(2)** awnings, fences, aluminum framed screened enclosures, or aluminum framed carports; or

 **(3)** all personal property unless it is located within the principal residence for which this policy applies.

**j.** **"Fungi", Mold, Wet or Dry Rot, Or Bacteria** meaning the presence, growth, proliferation, spread or any activity of "fungi", mold, wet or dry rot or bacteria. This Exclusion does not apply:

 **(1)** When "fungi", mold, wet or dry rot, or bacteria results from fire or lightning; or

 **(2)** To the extent coverage is provided for in the "Fungi", Mold, Wet or Dry Rot, Or Bacteria Other Coverage under Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", mold, wet or dry rot, or bacteria is covered.

**k.** **Criminal or Illegal Activity,** meaning any and all criminal or illegal acts performed by any insured that result in damage to your structure or personal property.

**l.  Existing Damage**

**(1)** Damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date; or

**(2)** Claims or damages arising out of workmanship, repairs or lack of repairs arising from damage which occurred prior to policy inception.

This Exclusion does not apply in the event of a total loss caused by a Peril Insured Against.

**m.  Change in Occupancy or Usage of "Residence Premises"**

If the company has not been promptly notified of a change in occupancy or usage of the "residence premises", any loss occurring during or after that time will be excluded from coverage.

**n.  Diminished Value**

We do not cover any loss due to diminished value of any property covered under this policy.

## CONDITIONS

**4. Your Duties After Loss,**

The sentence "In case of loss to a covered property, you must see that the following are done:" is replaced by the following:

**In case of loss to a covered property, you must see that all of the following are done:**

Item **4.a.** is replaced by the following:

**a.** Give prompt notice to us or our agent. And, if applicable, your notice must satisfy the following requirements:

**(1)** A claim, supplemental claim, or reopened claim for loss or damage caused by the peril of windstorm or hurricane is barred unless notice of the claim, supplemental claim, or reopened claim is given to us in accordance with the terms of the policy within 3 years after the hurricane first made landfall or the windstorm caused the covered damage. For purposes of this section, the term "supplemental claim" or "reopened claim" means any additional claim for losses from the same hurricane or windstorm

which we have previously adjusted pursuant to the initial claim;

Item **4.c.** is replaced by the following:

**c.** prepare an inventory of damaged personal property showing the quantity, description, age, actual cash value and amount of loss. Attach bills, receipts and related documents that establish ownership of the damaged personal property and justify the figures in the inventory.

Item **4.d.** is replaced by the following

**d.** As often as we reasonably require:

**(1)** Show the damaged property;

**(2)** Provide us with records and documents we request and permit us to make copies;

**(3)** You or any "insured" under this policy must:

**i.** Submit to examinations under oath and recorded statements, while not in the presence of any other "insured"; and

**ii.** Sign the Same;

**(4)** If you are an association, corporation or other entity; any members, officers, directors, partners or similar representatives of the association, corporation or other entity must:

**i.** Submit to examinations under oath and recorded statements, while not in the presence of any other "insured"; and

**ii.** Sign the Same.

**(5)** Anyone you hire in connection with your claim and anyone insured under this policy, other than an "insured" in **(3)** or **(4)** above, must:

**i.** Submit to examinations under oath and recorded statements, while not in the presence of any other "insured"; and

**ii.** Sign the Same;

The following is added:

**f.** At our request, provide to us or execute an authorization which allows us to obtain on your behalf, records and documentation we

deem relevant to the investigation of your loss.

**5. Loss Settlement**,
Item **b.(4)** is replaced by the following:
(4)  We will pay at least the actual cash value of the damage, less any applicable deductible, until actual repair is performed. We will pay any remaining amounts necessary to perform such repairs as the work is performed and the expenses are incurred and according to the provisions of **b.(1)** and **b.(2)** above. However, if the cost to repair or replace the damage is both:
(a)  Less than 5% of the amount of insurance in this policy on the building; and
(b)  Less than $2500;
we will settle the loss according to the provisions of **b.(1)** and **b.(2)** above whether or not actual repair or replacement is complete. If a total loss, we will pay the replacement cost amount without deduction for depreciation.

Item **b.(5)** is deleted.

The following is added to item **b.**:
(6)  When damage from Hail consists only of dents to the exterior surface of a home or other structures, not causing structural damage, we will pay the lowest of the following amounts:
(a)  the cost of repairing or replacing the damaged portion of the property; or
(b)  2% of the amount of insurance provided under Coverage A – Dwelling.
Hail often dents the exterior surface of a home or other structures without causing structural damage.  Materials usually affected by this type of damage include but are not limited to metal, fiberglass or rigid plastic porches, carports, awnings and utility rooms.  When this type of loss or damage occurs, this Loss Settlement Condition will apply.

**8. Appraisal** is replaced by the following:
**8. Mediation or Appraisal.**  If you or we:
a.  Are engaged in a dispute regarding a claim under this policy, either party may demand a mediation of the loss in accordance with the rules established

by the Florida Department of Financial Services.  The results of the mediation are binding only when both parties agree, in writing, on a settlement and, you have not rescinded the settlement within 3 business days after reaching settlement.  You may not rescind the settlement after cashing or depositing the settlement check or draft we provided you.

We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the costs of that rescheduled conference.

b.  Fail to agree on the amount of the loss, either party may demand an appraisal of the loss.  In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other.   The two appraisers will choose an umpire.   If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of the loss.

Each party will:
(1)  Pay its own appraiser; and
(2)  Bear the other expenses of the appraisal and umpire equally.
If, however, we demanded the mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

**11. Suit Against Us** is replaced by the following:
**11. Suit Against Us.**  No action can be brought unless the policy provisions have been complied with and the action is started within 5 years after the date of loss.

**12. Our Option** is deleted.

**13. Loss Payment** is replaced by the following:

**13. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable upon the earlier of the following:

**a.** 20 days after:

   **(1)** We receive your proof of loss and reach written agreement with you; or

   **(2)** Written executed mediation settlement with you according to the terms of the written mediation settlement; or

**b.** 60 days after we receive your proof of loss and:

   **(1)** There is an entry of a final judgment or, in the case of an appeal from such judgment, within 60 days from and after the affirmance of the same by the appellate court; or

   **(2)** There is a filing of an appraisal award or, in the case of an appeal from such award, within 60 days from and after the affirmance of the same by the appellate court; or

**c.** Within 90 days after we receive notice from you of an initial, reopened, or supplemental property insurance claim, we shall pay or deny such claim or a portion of the claim unless the failure to do so is caused by factors beyond our control which reasonably prevent such payment. However, failure to pay or deny within 90 days does not form the sole basis for a private cause of action.

However, any payment made by us shall not constitute a waiver of our rights within the policy.

**15. Mortgage Clause** is replaced by the following:

**15. Mortgage Clause.**

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

**a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

**c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **b.** and **f.** of **2.** Duties After Loss, **6.** Mediation or Appraisal, **8.** Suit Against Us and **10.** Loss Payment under **Section I – Conditions** also apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

**a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

**b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

We provide coverage to no mortgagee or its representatives under this policy if, whether before or after a loss, a mortgagee or its representatives has:

**a.** Intentionally concealed or misrepresented any material fact or circumstance;

**b.** Engaged in fraudulent conduct; or

**c.** Made material false statements;

relating to this insurance.

**17. Cancellation** is replaced by the following:

**17. Cancellation**

**a.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**b.** When this policy has been in effect for 90 days or less, we may cancel immediately if:

   **(1)** There has been a material misstatement or misrepresentation or failure to comply with underwriting requirements; and

**(2)** The "residence premises" has not been insured by us or any of our affiliated insurers for at least five years immediately prior to the date of the written notice.

**c.** We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

**(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**(2)** When this policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

**(a)** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(b)** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

Except as provided in Paragraphs **17.b.** and **17.c.(1)** of this provision, we will let you know of our action at least:

**(a)** 120 days before the date cancellation takes effect if the "residence premises" has been insured by us or any of our affiliated insurers for at least five years immediately prior to the date of the written notice; or

**(b)** 20 days before the date cancellation takes effect in all other cases.

**(3)** When this policy has been in effect for more than 90 days, we may cancel:

**(a)** If there has been a material misstatement;

**(b)** If the risk has changed substantially since the policy was issued;

**(c)** In the event of failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;

**(d)** If the cancellation is for all insureds under policies of this type for a given class of insureds;

**(e)** On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(f)** On the basis of a single claim which is the result of water damage, if we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

We will provide the following notice:

**(a)** If the "residence premises" has been insured by us or any of our affiliated insurers for at least five years immediately prior to the date of the written notice, we will let you know at least 120 days before the date cancellation takes effect.

If Paragraph **(a)** does not apply, and:

**(b)** If the date of cancellation becomes effective on or after December 1 and before June 1, we will let you know at least 100 days before the date cancellation takes effect; or

**(c)** If the date of cancellation becomes effective on or after June 1 and before December 1, we will let you know:

**(i)** At least 100 days before the date cancellation takes effect; or

**(ii)** By June 1;

whichever is earlier.

If more than one notice requirement applies, we will provide the broadest notice.

**d.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**e.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within 15 days after the date cancellation takes effect.

**18. Nonrenewal** is replaced by the following:

**18. Nonrenewal.** We may elect not to renew this policy. However, we will not nonrenew this policy on the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property.

We may do so by delivering to you or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for nonrenewal, at least one hundred (100) days before the expiration date of this policy. We shall give at least one hundred (100) days written notice, or when required by law, written notice by June 1, whichever is earlier, for any cancellation that would be effective on or after June 1 and before December 1.

However, we shall give you at least 120 days written notice of nonrenewal if you have been insured by us or an affiliate for at least five (5) consecutive years immediately prior to the date of the written notice.

Proof of mailing will be sufficient proof of notice.

A single claim on a property insurance policy that is the result of water damage may not be used as the sole cause for nonrenewal unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the "insured" property.

The following **Conditions** are added:

**26. Renewal Notification.** If we elect to renew this policy, we will let you know, in writing:

**a.** of our decision to renew this policy; and

**b.** the amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy.

**27. Venue.** This policy and any performance hereunder shall be construed with and governed by the laws of the State of Florida.

**28. Assignment of Claim Benefits.** No assignment of claim benefits, regardless of whether made before loss or after loss, shall be valid without the written consent of all "insureds", all additional insureds and all mortgagee(s) named in this policy.

**29. Our Right To Recompute Premium.**

**30.** We established the premium for this policy based on the statements you made in the application for insurance. We have the right to recompute the premium if we later obtain information which affects the premium we charged

All other provisions of this policy apply.

## SPECIAL PROVISIONS - LIABILITY

### DEFINITIONS

The following definition is added:

**9.** "Personal watercraft" means watercraft designed to carry one to three people, propelled by a water jet pump powered by an internal combustion engine, and capable of speeds greater than 25 MPH.  Personal watercraft include but are not limited to watercraft often referred to as jet skis, wave runners and similar watercraft.

### EXCLUSIONS

Under **1. Coverage L – Personal Liability and Coverage M – Medical Payments to Others** do not apply to "bodily injury" or "prioperty damage:"
Items **a.**, **f.**, and **k.** are deleted and replaced with the following:

**a.** which is expected or intended by one or more "insureds";

**f.** arising out of :
**(1)** the ownership, maintenance, use, loading or unloading of and excluded watercraft as defined below;
**(2)** the entrustment by an "insured" of an excluded watercraft described below to any person; or
**(3)** vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using and excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor including "personal watercraft", or are sailing vessels, whether owned or rented to an "insured".  This exclusion does not apply to watercraft:

**(1)** that are not "personal watercraft" or sailing vessels and are powered by:
**(a)** inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";
**(b)** inboard or inboard-outdrive engine or motor power of more than 50 horsepower not

owned by or rented to an "insured";
**(c)** one or more outboard engines or motors with 25 total horsepower or less;
**(d)** one or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";
**(2)** that are sailing vessels, with or without auxiliary power:
**(a)** less than 26 feet in overall length;
**(b)** 26 feet or more in overall length, not owned by or rented to an "insured".
**(3)** that are stored.

**k.** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined under federal law.  Controlled Substances include but are not limited to cocaine, LSD, marijuana, and all narcotic drugs.  However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

The following Exclusion is added:
**l.** arising out of an assault and/or battery committed by the Named Insured.

Under **2. Coverage L – Personal Liability**, does not apply to:

The following items are added:

**g.** "Bodily injury" or "property damage" caused, whether in whole or in part, by any animal owned by or kept, including temporary supervision, by you or any insured, resident, tenant, or guest whether or not the injury or damage occurs on the "residence premises" or elsewhere.
**h.** "Bodily injury" or "property damage" arising out of the ownership or use of a trampoline owned by, rented by or loaned to an insured, resident, tenant or guest whether on the "residence premises" or elsewhere.
**i.** "Bodily injury" or "property damage" arising out of the ownership or use of a diving board or slide owned by or rented by any

insured, resident, tenant or guest whether on the "residence premises" or elsewhere.

**j.**  "Bodily injury" or "property damage" arising out of criminal or illegal activity, meaning any and all criminal or illegal acts performed by any insured, resident, tenant or guest regardless of whether the consequences of those acts were intended or anticipated.

**CONDITIONS**

**10. Subrogation.**  The following sentence is added to the first paragraph of this condition:

> However, we waive any rights of recovery against the corporation or association of property owners of the condominium where the "residence premises" is located.

The following Conditions are added:

**11.  Concealment or Fraud.**  We do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

**a.**  intentionally concealed or misrepresented any material fact or circumstance,

**b.**  engaged in fraudulent conduct; or

**c.**  made material false statements, relating to this insurance.

**12.  Venue.** This policy and any performance there under shall be construed with and governed by the laws of the State of Florida.

All other provisions of this policy apply.

**PERSONAL LIABILITY**
**DL 24 16 07 88**

# <u>NO</u> COVERAGE FOR
# HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy does not provide coverage, because a "business" of an "insured" is excluded under Exclusion 1.b.(1).

THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.

# Deductible Notification Form
## (ASI HO 09 DN 09 05)

Florida Law requires us to notify you of your right to choose a deductible for the peril of windstorm during a hurricane.  The available hurricane deductibles are as follows:

- $500 Flat Deductible
- 2% Deductible
- 5% Deductible
- 10% Deductible

All percentages refer to the percent of the Dwelling Coverage value shown on the declarations page.  For example: If you choose the 2% deductible and your dwelling coverage is $150,000, you will have a $3,000 deductible for any loss caused by windstorm during a hurricane.  Some hurricane deductibles may not be available due to the value of your dwelling.  If you select a lower hurricane deductible when a hurricane loss has already occurred under our policy or under one in our company group during that calendar year, the lower deductible will not take effect until January 1 of the following calendar year.

Florida Law also requires us to notify you of the availability of a $500 deductible applicable to losses from perils other than hurricane.

Your policy declaration page reflects your current hurricane deductible and other perils deductible.  If you wish to change either of your deductibles, please call your agent listed on the declaration page.  In the event that an affirmative selection is made, we will continue to apply the Hurricane Deductible listed on your Declarations Page.

ASI HO 09 DN 09 05

**DWELLING**
**DP 04 70 07 88**

## PREMISES ALARM OR
## FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the Described Location. You agree to maintain this system in working order and to notify us promptly of any change made to the system or if it is removed.

## LIMITED FUNGI, MOLD, WET OR DRY ROT, OR BACTERIA COVERAGE ENDORSEMENT
### (ASI DF 09 FCL 05 05)

| | | |
|---|---|---|
| **1.** | Coverage L - Coverage E Aggregate Sublimit of Liability for "Fungi", Mold, Wet Or Dry Rot, Or Bacteria | **$50,000** |

### DEFINITIONS

The following definition is added:

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or by-products produced or released by fungi.  This does not include any fungi that are on, or are contained in, a good or product intended for consumption.

### CONDITIONS

Condition 1. Limit of Liability is deleted and replaced by the following:

**1. Limit of Liability**
Our total liability under Coverage L for all damages resulting from any one "occurrence" will not be more than the Coverage L limit of liability shown in the Declarations.  This limit is the same regardless of the number of "insureds", claims made or persons injured.  All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage M for all medical expenses payable for "bodily injury" to one person as the result of once accident will not be more than the Coverage M limit of liability shown in the Declarations.

However, our total liability under Coverage L for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", mold, wet or dry rot, or bacteria will not be more than the Coverage L Aggregate Sublimit of Liability for "Fungi", Mold, Wet or Dry Rot, or Bacteria.  That Sublimit is the amount shown in the Schedule.  This is the most we will pay regardless of the:

   a. Number of locations insured under the policy to which this endorsement is attached;
   b. Number of persons injured;
   c. Number of persons whose property is damaged;
   d. Number of "insureds"; or
   e. Number of "occurrences" or claims-made.

This Sublimit is within, but does not increase, the Coverage L limit of liability.  It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "Fungi", Mold, Wet or Dry Rot, or Bacteria described in 1. Limit of Liability of this endorsement, Condition 2. **Severability of Insurance** is deleted and replaced with the following:

### 2. Severability of Insurance

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Condition 1. **Limit of Liability**.  This condition will not increase the limit of liability for this coverage.

All other policy provisions apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SINKHOLE LOSS COVERAGE AND CATASTROPHIC GROUND COVER COLLAPSE COVERAGE – FLORIDA**

| "Sinkhole Loss" Deductible Percentage Amount:    **10%** |
|---|

| *Entries may be left blank if shown on the declarations in this policy. |
|---|

**DEFINITIONS**

For the purposes of this endorsement, the following definitions are added:

1. "Sinkhole" means a landform created by subsidence of soils, sediment, or rock as underlying strata are dissolved by ground water. A "sinkhole" forms by collapse into subterranean voids created by dissolution of limestone or dolostone or by subsidence as these strata are dissolved.

2. "Sinkhole activity" means settlement or systematic weakening of the earth supporting the "principal building" covered under Section I of your policy. The settlement or systematic weakening must result from contemporaneous movement or raveling of soils, sediments, or rock material into subterranean voids created by the effect of water on limestone or similar rock formations.

3. "Sinkhole loss" means "structural damage" to the "principal building" caused by "sinkhole activity".

4. "Catastrophic ground cover collapse" means geological activity that results in all of the following:
   a. The abrupt collapse of ground cover;
   b. A depression in the ground cover clearly visible to the naked eye;
   c. "Structural damage" to the "principal building," including the foundation; and
   d. The "principal building" being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that "principal building".

5. "Principal building" means the primary residential building on the "residence premises" where you reside, including its foundation, attached wall-to-wall carpeting, and attached garage..

   "Principal building" does not include:
   a. land;
   b. appurtenant structures;

   c. fences, walls, retaining walls, porches or carports, unless they are required for the structural integrity of the "principal building";
   d. driveways or sidewalks;
   e. awnings, screened enclosures or other patio covers;
   f. outdoor pools, spas, or hot tubs including their related equipment; or
   g. those portions of sprinkler systems or plumbing systems located outside of the "principal building" unless required for the legal habitation of the "principal building".

   If Form **ASI HO 09 UOA** is a part of this policy, this coverage is limited to the alterations, appliances, fixtures and improvements which are part of the "principal building" and which are your insurance responsibility under a corporation or association of property owners agreement.

6. "Structural damage" means the "principal building", regardless of the date of its construction, has experienced the following:
   a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;
   b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceeds one and one-third the nominal strength allowed under the

Florida Building Code for new buildings of similar structure, purpose, or location;

c. Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

d. Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

e. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

7. "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

8. "Primary structural system" means an assemblage of "primary structural members".

9. "Neutral evaluation" means Florida's alternative procedure for resolution of disputed "sinkhole loss" claims.

10. "Neutral evaluator" means a professional engineer or a professional geologist who has completed a course of study in alternative dispute resolution designed or approved by the Florida Department of Financial Services (the Department) for use in the "neutral evaluation" process and who is determined by the Department to be fair and impartial.

**OTHER COVERAGES**

The following Coverages are added:

**"Catastrophic Ground Cover Collapse" Coverage**

a. We insure for direct physical loss to the "principal building" caused by the peril of "catastrophic ground cover collapse".

b. Coverage C – Personal Property applies if there is a direct physical loss resulting from a "catastrophic ground cover collapse", unless the loss is excluded elsewhere in this policy.

c. Damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute a loss resulting from a "catastrophic ground cover collapse".

d. If the "principal building" suffers a "catastrophic ground cover collapse", you must repair such damage or loss in accordance with the repair recommendations made by the professional engineer retained or approved by us. However, if the professional engineer retained or approved by us determines that the repair cannot be completed within policy limits, we will, at our option, either pay to complete the repairs recommended by the professional engineer retained or approved by us or pay the applicable policy limits.

This coverage does not increase the limit of liability that applies to the damaged property.

The Earth Movement and Settlement exclusion **1.b.** does not apply to this coverage.

**"Sinkhole Loss" Coverage**

a. We insure for "sinkhole loss" to the "principal building", including any contents of personal property contained therein, if investigation proves that "structural damage" has occurred to the "principal building" as a result of "sinkhole activity". "Sinkhole loss" coverage does not apply to Coverage B – Other Structures. "Sinkhole loss" coverage includes the costs incurred to:

(1) Stabilize the land and building; and

(2) Repair the foundation;

in accordance with the recommendations of the professional engineer who verifies the presence of a "sinkhole loss" in compliance with Florida "sinkhole" testing standards and with notice to you.

The professional engineer must be retained or approved by us.

b. This coverage does not increase the limit of liability that applies to the damaged covered property.

The Earth Movement and Settlement exclusion **1.b.** does not apply to this coverage.

**GENERAL EXCLUSIONS**

The following is added to item **1.l. Existing Damage**:

(3) Any damage caused by "sinkhole activity" or "catastrophic ground cover collapse" occurring prior to the inception of this policy.

**CONDITIONS**

Under **4. Your Duties After Loss**:

The following is added to item **a.**:

If this policy provides "sinkhole" coverage, any claim, including but not limited to initial, supplemental, and reopened claims is barred unless notice of the claim is given to us within 2 years after you knew or reasonably should have known about the "sinkhole loss".

The following items are added:

**g.** You may not accept a "rebate" from any person performing repairs related to a "sinkhole loss" or "catastrophic ground cover collapse." If you receive a "rebate", coverage is void and you must refund the amount of the "rebate" to us. "Rebate" means a remuneration, payment, gift, discount, or transfer of any item of value to the policyholder by or on behalf of a person performing the repairs specified in this coverage as an incentive or inducement to obtain repairs performed by that person.

**h.** If coverage for "sinkhole loss" is available and we deny the claim without performing testing under Section 627.7072, Florida Statutes, you may demand that we perform such testing only by communicating your demand to us in writing within 60 days after you receive our denial of the claim. However, you shall pay 50 percent of the actual costs of the testing, analyses and services or $2,500, whichever is less. We shall only reimburse you for the actual costs of the testing, analyses, and services if our engineer or geologist provides written certification that there is a "sinkhole loss."

**i.** You must make repairs for a "sinkhole loss" in accordance with the repair recommendations made by the professional engineer retained or approved by us. If you elect to complete repairs based on another engineer's recommendations, we are not obligated to reimburse you for such repairs.

With respect to "sinkhole loss" as provided in this endorsement, **5. Loss Settlement** is deleted and replaced by the following:

**5. Loss Settlement**

In the event of a covered "sinkhole loss" payable under this endorsement, covered property losses are settled as follows. No other Loss Settlement provision of this policy applies to a covered "sinkhole loss."

   **a.** Personal Property at actual cash value at the time of loss but not more than the amount required to repair or replace.

**b.** Covered damage to the "principal building," which does not include underpinning or grouting or any other repair technique performed below the existing foundation of the building, at actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is completed in accordance with the recommendations of the professional engineer retained or approved by us, we will settle the loss at replacement cost without deduction for depreciation.

**c.** Covered "structural damage" to the "principal building" as follows:

   **(1)** We will pay for "sinkhole loss", subject to **(9)(b)** below, up to the applicable limit of liability shown in the Declarations, subject your "Sinkhole Loss" Deductible.

   **(2)** Subject to the applicable limit of liability, this subsection **c.** through subsection **m.** below, and all other coverage and terms under this policy, we will pay the reasonable and necessary expenses to stabilize the land and "principal building" and repair the foundation in accordance with the recommendations of the professional engineer retained or approved by us, with notice to you, provided these expenses are caused by a covered "sinkhole loss."

   **(3)** If the "principal building" suffers a "sinkhole loss", you must repair such damage or loss in accordance with the repair recommendations of the professional engineer retained or approved by us. However, if the professional engineer retained or approved by us determines that the repair cannot be completed within policy limits, we will, at our option, pay to complete the repairs recommended by the professional engineer retained or approved by us or pay the applicable policy limits.

   **(4)** In order to prevent additional damage, if the professional engineer retained or approved by us recommends repairs, you must enter into a contract for the performance of the "principal building" stabilization and foundation repairs recommended by the professional engineer retained or approved by us within 90 days after we notify you that coverage for the loss has been confirmed.  This time period is tolled if you or we invoke the "neutral evaluation" process, and begins again 10 days after

the conclusion of the "neutral evaluation" process.

**(5)** We will pay no more than the actual cash value of the damaged property, which does not include underpinning or grouting or any other repair technique performed below the existing foundation of the "principal building", until you enter into a contract for the performance of building stabilization or foundation repairs in accordance with the recommendations set forth in the report created by the professional engineer retained or approved by us and issued pursuant to section 627.7073, Florida Statutes.

**(6)** After you enter into the contract for the performance of building stabilization and foundation repairs, we will pay the amounts necessary to begin and perform such repairs as the work is performed and as the expenses are incurred by you.

**(7)** The stabilization and all other repairs to the structure must be completed within 12 months after entering into the contract for repairs described in paragraph **c.(6)** above unless:

   **(a)** There is a mutual agreement between you and us;

   **(b)** The claim is involved with the "neutral evaluation" process;

   **(c)** The claim is in litigation; or

   **(d)** The claim is under appraisal or mediation.

**(8)** We may, at our option, and with written approval of any lienholder, make payment directly to the persons selected by you to perform the land and building stabilization and foundation repairs. This decision to make payment to such persons does not hold us liable for the work performed.

**(9)** If repair has begun and the professional engineer retained or approved by us determines that the repairs will exceed the applicable limit of liability, we will at our option, either:

   **(a)** Pay to complete the professional engineer's recommended repairs; or

   **(b)** Pay the policy limits without a reduction for the repair expenses incurred.

**(10)** If you have submitted a "sinkhole" claim without good faith grounds for submitting such claim, you request that "sinkhole" testing, analysis and services be provided, we inform you in writing of your potential liability for reimbursement, and the claim is not withdrawn prior to our ordering a "sinkhole" analysis to investigate your claim, you are required, after we obtain written certification that there is no "sinkhole activity", to reimburse us for 50% of the actual costs, up to $2500, of the analysis and services provided by a professional engineer or professional geologist to conduct testing to determine the cause of loss; pursuant to Florida Statutes 627.7072 and 627.7073.

**(11)** As a precondition to us issuing payment and you accepting payment from us for a "sinkhole loss", you must file with the county clerk of court a copy of any "sinkhole" report regarding the insured property which was prepared on your behalf or at your request. You shall bear the cost of filing and recording any such "sinkhole" report.

**(12)** The "Sinkhole Loss" Deductible applies to all "sinkhole losses"; is shown on the Declarations Page; and applies separately to each covered "sinkhole loss."

With respect to "sinkhole loss" as provided in this endorsement, Condition **8. Mediation or Appraisal** is deleted and replaced by the following:

**8. Alternative Dispute Resolution.**

   **a.** **Appraisal.** If you or we fail to agree on the amount of covered loss under this endorsement, either party may demand an appraisal of:

      **(1)** The amount of covered loss to personal property;

      **(2)** The amount of covered loss to the "principal building," which does not include underpinning or grouting or any other repair technique performed below the existing foundation of the building; or

      **(3)** Both.

   However, the amount of underpinning or grouting or any other repair technique performed below the existing foundation of the building is not eligible for appraisal because it is not payable until the work is performed in accordance with the recommendations of the professional

engineer retained or approved by us and the expenses are incurred.

In the event that you or we demand appraisal for a qualifying type of loss, each party will choose a competent appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of the loss.

Each party will:
  **(1)** Pay its own appraiser; and
  **(2)** Bear the other expenses of the appraisal and umpire equally.

**b. "Neutral Evaluation" Program**

With respect to a claim for alleged "sinkhole loss", the "neutral evaluation" program is available as follows:

**(1)** Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land and building stabilization and repair of the foundation, or if we deny your claim, we will notify you of your right to participate in a "neutral evaluation" program administered by the Florida Department of Financial Services (the Department.)

**(2)** You or we may file a request with the Department for "neutral evaluation"; the other party must comply with such requests.

**(3)** We will pay the costs associated with the "neutral evaluation" regardless of which party makes the request.

**(4)** The "neutral evaluator" will be selected from a list maintained by the Department. The recommendation of the "neutral evaluator" will not be binding on us or the insured.

**(5)** Participation in the "neutral evaluation" program does not change your right to file suit against us in accordance with Condition **11. Suit Against Us**.

**(6)** Neutral evaluation supersedes mediation as an alternative dispute resolution tool for coverage under this endorsement unless you and we agree in writing to use mediation instead of neutral evaluation.

**(7)** Neutral evaluation does not invalidate the appraisal clause contained in this endorsement.

With respect to "sinkhole loss" as provided in this endorsement, Condition **11. Suit Against Us** is replaced by the following:

**11.      Suit Against Us**

No action can be brought against us; unless:

  **a.** There has been full compliance with all of the terms of this policy; and

  **b.** The action is started within 5 years after the date of the loss;

except that the time for filing suit is extended for a period of 60 days following the conclusion of the "neutral evaluation" process or 5 years, which ever is later.

With respect to "sinkhole loss" as provided in this endorsement, Condition **13. Loss Payment** is replaced by the following:

**13. Loss Payment**.

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable pursuant to the Loss Settlement provisions of this endorsement.

The following Conditions are added:

**"Sinkhole Loss" Deductible**

The following replaces any other deductible provision in this policy with respect to "sinkhole loss" covered under this policy.

We will pay only that part of the total of all loss payable   that exceeds the "Sinkhole loss" deductible.

The dollar amount of the "sinkhole loss" deductible is determined by multiplying the Coverage **A** limit of liability shown in the Declarations by the deductible percentage amount shown in the Schedule above.

**No Liability for Work Performed**

Upon completion of any building stabilization or foundation repairs for a verified "sinkhole loss", the professional engineer responsible for monitoring the repairs shall issue a report to you which specifies what repairs have been performed and certifies within a reasonable degree of professional probability that such repairs have been properly performed. The

professional engineer issuing the report shall file a copy of the report and certification with the county clerk of the court, who shall record the report and certification.

We have no liability based on any representation or certification by the professional engineer related to the stabilization or foundation repairs for the verified "sinkhole loss". Our decision to make payment for land and building stabilization and foundation repairs does not hold us liable for the work performed.

## SECTION I AND II – CONDITIONS

The following is added to item **17. Nonrenewal**:

**b.** On the basis of filing of claims for "sinkhole loss". However, we may elect not to renew this policy if:

    **(1)** The total of such claim payments for "sinkhole loss" equals or exceeds the policy limits of coverage for the policy in effect on the date of loss, for property damage to the covered building, as set forth on the declarations page; or

    **(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

All other provisions of this policy apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WINDSTORM OR HAIL EXCLUSION – FLORIDA

### (ASI DF 09 WHE 01 07)

For the purposes of this endorsement, a hurricane is described as follows:

**a.** A hurricane means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service.

**b.** A hurricane occurrence:

   **(1)** Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service; and

   **(2)** Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

**PERILS INSURED AGAINST**

In all forms, coverage for:

**a.** The peril of windstorm or hail; or

**b.** The peril of windstorm during a hurricane

is deleted.

**GENERAL EXCLUSIONS**

The following is added to Paragraph **1:**

   **WINDSTORM OR HAIL OR WINDSTORM DURING A HURRICANE**

   However, this exclusion does not apply to direct loss by fire or explosion resulting from windstorm or hail, including windstorm during a hurricane.

All other provisions of this policy apply.

POLICY NUMBER:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PREMISES LIABILITY - FLORIDA

**DEFINITIONS**

Definition **4.** "Insured location" includes only the premises shown as the "residence premises" in the Declarations.

**LIABILITY COVERAGES**

Coverage **L** – Personal Liability and Coverage **M** – Medical Payments To Others are restricted to apply only with respect to "bodily injury" and "property damage":

    **1.**  Arising out of the ownership, maintenance, occupancy or use of the "insured location"; and

    **2.**  Occurring on the "insured location".

**EXCLUSIONS**

Exclusion **1.b.** does not apply to the premises shown in the Schedule.

All other provisions of this policy apply.

PERSONAL LIABILITY
DL 24 01 07 88

---

## AGREEMENT

---

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

---

## DEFINITIONS

---

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "business" includes trade, profession or occupation.

3. "insured" means you and residents of your household who are:

   a. your relatives;

   b. other persons under the age of 21 and in the care of any person named above;

   c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3a or 3b above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured;"

   d. with respect to any vehicle to which this policy applies:

      (1) persons while engaged in your employ or that of any person included in 3a or 3b above; or

      (2) other persons using the vehicle on an "insured location" with your consent.

4. "insured location" means:

   a. the "residence premises;"

   b. the part of other premises, other structures and grounds used by you as a residence and:

      (1) which is shown in the Declarations; or

      (2) which is acquired by you during the policy period for your use as a residence;

   c. any premises used by you in connection with a premises in 4a or 4b above;

   d. any part of a premises:

      (1) not owned by an "insured;" and

      (2) where an "insured" is temporarily residing;

   e. vacant land, other than farm land, owned by or rented to an "insured;"

   f. land owned by or rented to an "insured" on which a one to four family dwelling is being built as a residence for an "insured;"

   g. individual or family cemetery plots or burial vaults of an "insured;" or

   h. any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "bodily injury;" or

   b. "property damage."

6. "property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "residence employee" means:

   a. an employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. one who performs similar duties elsewhere not related to the "business" of an "insured."

8. "residence premises" means:

   a. the one family dwelling, other structures, and grounds; or

   b. that part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two, three or four family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

## LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured."

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### COVERAGE M – MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. to a person on the "insured location" with the permission of an "insured;" or

2. to a person off the "insured location," if the "bodily injury:"

   a. arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. is caused by the activities of an "insured;"

   c. is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured;" or

   d. is caused by an animal owned by or in the care of an "insured."

## EXCLUSIONS

1. **Coverage L-Personal Liability** and **Coverage M-Medical Payments to Others** do not apply to "bodily injury" or "property damage:"

   a. which is expected or intended by the "insured."

   b.(1) arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business;"

   (2) arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location:"

   (a) on an occasional basis if used only as a residence;

   (b) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

   (c) in part, as an office, school, studio or private garage.

   c. arising out of the rendering of or failure to render professional services.

   d. arising out of a premises:

   (1) owned by an "insured;"

   (2) rented to an "insured;" or

   (3) rented to others by an "insured;"

   that is not an "insured location."

   e. arising out of:

   (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured;"

   (2) the entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

   (3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

   This exclusion does not apply to:

   (1) a trailer not towed by or carried on a motorized land conveyance.

   Copyright, Insurance Services Office, Inc.,  1988, 1992   **DL 24 01 07 88**

**(2)** a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

    **(a)** not owned by an "insured;" or

    **(b)** owned by an "insured" and on a "insured location."

**(3)** a motorized golf cart when used to play golf on a golf course.

**(4)** a vehicle or conveyance not subject to motor vehicle registration which is:

    **(a)** used to service an "insured's" residence;

    **(b)** designed for assisting the handicapped; or

    **(c)** in dead storage on an "insured location."

**f.** arising out of:

**(1)** the ownership, maintenance, use, loading or unloading of a watercraft described below;

**(2)** the entrustment by an "insured" of a watercraft described below to any person; or

**(3)** vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a watercraft described below.

Watercraft:

**(1)** with inboard or inboard-outdrive motor power owned by an "insured;"

**(2)** with inboard or inboard-outdrive motor power of more than 50 horsepower rented to an "insured;"

**(3)** that are sailing vessels, with or without auxiliary power, 26 feet or more in length owned by or rented to an "insured;" or

**(4)** powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an "insured." But, outboard motors of more than 25 total horsepower are covered for the policy period if:

    **(a)** you acquire them prior to the policy period and:

        **(i)** you declare them at policy inception; or

        **(ii)** your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

    **(b)** you acquire them during the policy period.

This exclusion does not apply while the watercraft is stored.

**g.** arising out of:

**(1)** the ownership, maintenance, use, loading or unloading of an aircraft;

**(2)** the entrustment by an "insured" of an aircraft to any person; or

**(3)** vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

**h.** caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**i.** which arises out of the transmission of a communicable disease by an "insured."

**j.** arising out of sexual molestation, corporal punishment or physical or mental abuse.

**k.** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.  However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions d., e., f., and g. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

**2.** **Coverage L-Personal Liability,** does not apply to:

**a.** liability:

**(1)** for any loss assessment charged against you as a member of an association, corporation or community of property owners;

**(2)** under any contract or agreement. However, this exclusion does not apply to written contracts:

    **(a)** that directly relate to the ownership, maintenance or use of an "insured location;" or

    **(b)** where the liability of others is assumed by the "insured" prior to an "occurrence;"

unless excluded in (1) above or elsewhere in this policy.

**b.** "property damage" to property owned by the "insured."

**c.** "property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion.

d. "bodily injury" to any person eligible to receive any benefits:

(1) voluntarily provided; or

(2) required to be provided;

by the "insured" under any:

(1) workers' compensation law;

(2) non-occupational disability law; or

(3) occupational disease law.

e. "bodily injury" or "property damage" for which an "insured" under this policy:

(1) is also an insured under a nuclear energy liability policy; or

(2) would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) American Nuclear Insurers;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors.

f. "bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage M-Medical Payments to Others,** does not apply to "bodily injury:"

a. to a "residence employee" if the "bodily injury:"

(1) occurs off the "insured location;" and

(2) does not arise out of or in the course of the "residence employee's" employment by an "insured."

b. to any person eligible to receive benefits:

(1) voluntarily provided; or

(2) required to be provided;

under any:

(1) workers' compensation law;

(2) non-occupational disability law; or

(3) occupational disease law.

c. from any:

(1) nuclear reaction;

(2) nuclear radiation; or

(3) radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) any consequence of any of these.

d. to any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

---

## ADDITIONAL COVERAGES

---

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

a. expenses we incur and costs taxed against an "insured" in any suit we defend;

b. premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage L. We need not apply for or furnish any bond;

c. reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit;

d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

We will not pay for "property damage:"

a. caused intentionally by an "insured" who is 13 years of age or older;

b. to property owned by an "insured;"

c. to property owned by or rented to a tenant of an "insured" or a resident in your household; or

d. arising out of:

(1) a "business" engaged in by an "insured;"

(2) any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location;" or

(3) the ownership, maintenance or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

Copyright, Insurance Services Office, Inc.,  1988, 1992

**DL 24 01 07 88**

## CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage L for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage L as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage M for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage M as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

   **a.** give written notice to us or our agent as soon as is practical, which sets forth:

   **(1)** the identity of the policy and "insured;"

   **(2)** reasonably available information on the time, place and circumstances of the accident or "occurrence;" and

   **(3)** names and addresses of any claimants and witnesses;

   **b.** promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence;"

   **c.** at our request, help us:

   **(1)** to make settlement;

   **(2)** to enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured;"

   **(3)** with the conduct of suits and attend hearings and trials;

   **(4)** to secure and give evidence and obtain the attendance of witnesses;

   **d.** under the coverage – Damage to Property of Others – submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

   **e.** the "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person-Coverage M-Medical Payments to Others.**

   The injured person or someone acting for the injured person will:

   **a.** give us written proof of claim, under oath if required, as soon as is practical; and

   **b.** authorize us to obtain copies of medical reports and records.

   The injured person will submit to physical examination by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim-Coverage M-Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage L can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance-Coverage L-Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Policy Period.** This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

10. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

    If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

    Subrogation does not apply to Medical Payments to Others or Damage to Property of Others.

**DWELLING**
**DP 04 73 07 88**

# LIMITED THEFT COVERAGE

For an additional premium and for the limit of liability shown in this endorsement or elsewhere in this policy for this coverage, we insure against direct physical loss to personal property owned or used by you caused by the Perils Insured Against named below.

## A. PERILS INSURED AGAINST

**1. Theft,** including attempted theft.

**2. Vandalism or malicious mischief** as a result of theft or attempted theft. This peril does not include loss at the Described Location if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

## B. DEFINITIONS

The following definitions apply to the coverage provided by this endorsement:

**1.** "business" includes trade, profession or occupation.

**2.** "residence employee" means:

**a.** your employee whose duties are related to the maintenance or use of the Described Location, including household or domestic services; or

**b.** one who performs similar duties elsewhere not related to your "business."

## C. COVERAGES AND LIMITS OF LIABILITY

### 1. ON-PREMISES COVERAGE

Limit of Liability _____*.

This is the most we will pay for any one covered loss at the Described Location.

Coverage applies while the property is:

**a.** at the Described Location if the property is:

**(1)** owned or used by you; or

**(2)** owned by a "residence employee;" or

**b.** placed for safekeeping in any:

**(1)** bank, trust or safe deposit company;

**(2)** public warehouse; or

**(3)** occupied dwelling not owned, rented to or occupied by you.

### 2. SPECIAL LIMITS OF LIABILITY

These limits do not increase the limit of liability applicable to ON-PREMISES coverage. The special limit for each numbered category is the total limit for each loss for all property in that category.

**a.** $1,000 on watercraft including their trailers, furnishing, equipment and outboard motors.

**b.** $1,000 on trailers not used with watercraft.

**c.** $2,000 on firearms.

### 3. PROPERTY NOT COVERED

We do not cover:

**a.** loss caused by a tenant, roomer or boarder, members of the tenant's household, or their employees;

**b.** money, bank notes, bullion, gold, goldware, gold-plated ware, silver, silverware, silver-plated ware, pewterware, platinum, coins and medals;

**c.** securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, personal records, tickets and stamps;

**d.** jewelry, watches, furs, precious and semiprecious stones;

**e.** aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

**f.** motor vehicles or all other motorized land conveyances. This includes:

**(1)** their equipment and accessories; or

**(2)** any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or all other motorized land conveyances, including:

**(a)** accessories or antennas; or

**(b)** tapes, wires, records, discs or other media for use with any such device or instrument;

while in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

**(1)** used to service the Described Location; or

**(2)** designed for assisting the handicapped;

**g.** property held as a sample or for sale or delivery after sale;

**h.** "business" property;

**i.** animals, birds or fish;

**j.** credit cards or fund transfer cards; or

**k.** property separately described and specifically insured by any other insurance.

## D. CONDITIONS

**1.** Under Condition **4. Your Duties After Loss,** the following paragraph is added:

  **f.** notify the police in case of loss by theft.

**2.** Condition **9. Other Insurance** is deleted with respect to the coverage provided by this endorsement and replaced by the following:

**Other Insurance.** If a loss covered by this endorsement is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this endorsement bears to the total amount of insurance covering the loss.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc.,  1988
DP 04 73 07 88

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY REPLACEMENT COST
# LOSS SETTLEMENT – FLORIDA

## A. Eligible Property

**1.** Covered losses to the following property are settled at replacement cost at the time of the loss:

  **a.** Coverage **C;** and

  **b.** If covered in this policy:

    **(1)** Awnings, outdoor antennas and outdoor equipment; and

    **(2)** Carpeting and household appliances;

    whether or not attached to buildings.

**2.** This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

  **a.** Jewelry;

  **b.** Furs and garments:

    **(1)** Trimmed with fur; or

    **(2)** Consisting principally of fur;

  **c.** Cameras, projection machines, films and related articles of equipment;

  **d.** Musical equipment and related articles of equipment;

  **e.** Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

    **(1)** Pens or pencils;

    **(2)** Flasks;

    **(2)** Smoking implements; or

    **(3)** Jewelry; and

  **f.** Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

## B. Ineligible Property

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

**1.** Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

**2.** Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

**3.** Articles not maintained in good or workable condition.

**4.** Articles that are outdated or obsolete and are stored or not being used.

## C. Replacement Cost Loss Settlement Condition

The following loss settlement condition applies to all property described in **A.** above:

**1.** We will pay no more than the least of the following amounts:

  **a.** Replacement cost at the time of loss without deduction for depreciation;

  **b.** The full cost of repair at the time of loss;

  **c.** The limit of liability that applies to Coverage **C,** if applicable;

  **d.** Any applicable special limits of liability stated in this policy; or

  **e.** For loss to any item described in **A.2.a. – f.** above, the limit of liability that applies to the item.

**2.** We will settle the loss as follows:

  **a.** If the Mobilehome Endorsement is not made a part of this policy, we will settle the loss as noted in Paragraph **C.1.** above whether or not actual repair or replacement is complete.

 © ISO Properties, Inc., 2005

**b.** If the Mobilehome Endorsement is made a part of this policy:

**(1)** If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value of the loss until the actual repair or replacement is complete.

**(2)** You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

© ISO Properties, Inc., 2005

IN THE CIRCUIT COURT OF THE 14TH JUDICIAL
CIRCUIT IN AND FOR GULF COUNTY, FLORIDA

AMERICAN STRATEGIC INSURANCE )
CORP. a/s/o Michael & Wendy Saltzburg, )
                                   )
               Plaintiff, )            CASE NO.
                                     )
vs.                                  )
                                     )
AMERIGAS PROPANE, INC. and )
OMEGA FLEX, INC., )
                                     )
             Defendants. )
_____ )

## CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of Said State:

       YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the
Complaint in this action upon the Defendant:

Serve:       **AMERIGAS PROPANE, INC.**

Serve At:      c/o The Prentice-Hall Corporation System, Inc., Registered Agent
             1201 Hays Street
             Tallahassee, Florida 32301

Or serve such other individual as may be authorized by F.S. Ch. 48.

## <u>IMPORTANT</u>

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on
you to file a written response to the attached Complaint with the Clerk of this Court and to file a
written response with the Clerk of this Court. A phone call will not protect you. Your written
response, including the case number given above and the names of the parties, must be filed if
you want the Court to hear your side of the case. If you do not file your response on time, you
may lose the case, and your wages, money, and property may thereafter be taken without further
warning from the Court. There are other legal requirements. You may want to call an attorney
right away. If you do not know an attorney, you may call an attorney referral service or a legal
aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the Plaintiff's Attorney named as follows:

RICHARD J. MALESKI, ESQUIRE
COZEN, O'CONNOR
200 S. Biscayne Boulevard, Suite 4410
Miami, Florida  33131
(305)  704-5940

CLERK, Circuit and County Courts

_____
as Deputy Clerk

- 2 -

<div align="center">IMPORTANTE</div>

Usted ha sido demandado legalmente.   Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.   Una llamada telefonica no lo protegera.   Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas.   Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales.   Si lo desea, puede consultar a un abogado inmediatamente.   Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

<div align="center">IMPORTANT</div>

Des poursuites judiciares ont ete entreprises contre vous.   Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal.   Un simple coup de telephone est insuffisant pour vous proteger.   Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause.   Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.   Il y a d'autre obligations juridiques et vous pouvez requerir les services immediats d'un avocat.   Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**In accordance with the Americans with Disabilities Act of 1990, persons needing a special accommodation to participate in this proceeding should contact the Clerk of Court administration Office (904) 819-3601, no later than seven (7) days prior to the proceeding. If hearing impaired, telephone Florida Relay Service at 1-800-955-8771 for assistance.**

IN THE CIRCUIT COURT OF THE 14TH JUDICIAL
CIRCUIT IN AND FOR GULF COUNTY, FLORIDA

AMERICAN STRATEGIC INSURANCE )
CORP. a/s/o Michael & Wendy Saltzburg, )
                                       )
                    Plaintiff,         )          CASE NO.
                                       )
vs.                                    )
                                       )
AMERIGAS PROPANE, INC. and             )
OMEGA FLEX, INC.,                      )
                                       )
                    Defendants.        )
_____)

## CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of Said State:

        YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the
Complaint in this action upon the Defendant:

Serve:          **OMEGA FLEX, INC.**

Serve At:       451 Creamery Way
                Exton, Pennsylvania 19341

Or serve such other individual as may be authorized by F.S. Ch. 48.

## **IMPORTANT**

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on
you to file a written response to the attached Complaint with the Clerk of this Court and to file a
written response with the Clerk of this Court.  A phone call will not protect you.  Your written
response, including the case number given above and the names of the parties, must be filed if
you want the Court to hear your side of the case.  If you do not file your response on time, you
may lose the case, and your wages, money, and property may thereafter be taken without further
warning from the Court.  There are other legal requirements.  You may want to call an attorney
right away.  If you do not know an attorney, you may call an attorney referral service or a legal
aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the Plaintiff's Attorney named as follows:

RICHARD J. MALESKI, ESQUIRE
COZEN, O'CONNOR
200 S. Biscayne Boulevard, Suite 4410
Miami, Florida  33131
(305)  704-5940

CLERK, Circuit and County Courts

_____

as Deputy Clerk

<u>IMPORTANTE</u>

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

<u>IMPORTANT</u>

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autre obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**In accordance with the Americans with Disabilities Act of 1990, persons needing a special accommodation to participate in this proceeding should contact the Clerk of Court administration Office (904) 819-3601, no later than seven (7) days prior to the proceeding. If hearing impaired, telephone Florida Relay Service at 1-800-955-8771 for assistance.**